### George B. Brown v. John Mitchell et al.
#### No. 305.

**1. Depositions—Practice in Exceptions to.**

This court can not examine into the correctness of rulings of the trial court upon a motion to suppress depositions because irrelevant or incompetent, unless the record shows the form or substance of the interrogatories and answers objected to, and the ruling of the trial court upon such motion, and that exception was taken to such ruling .............. .......... .. 355

**2. Case Adhered to—Foreign Probate Courts.**

Record of probate proceedings showing the adoption of a child, from minutes of a Probate Court in State of Michigan, is competent without proof of the facts which would give such court jurisdiction of the subject matter. Brown v. Mitchell, 75 Texas, 13, adhered to .......... ....................... 355

**3. Charge—Capacity to Make Will.**

It was proper to refuse a charge, on trial of a contested will case, "that the law does not require the same amount of mental capacity to make a valid will as to make an ordinary contract." The jury would not be presumed to know what degree of capacity the law required to make a contract..... 356

4. Practice—Exceptions to Testimony.

    The bill of exceptions shows, that objection was sustained to the testimony
    of a witness, a part of whose testimony was not obnoxious to the objection.
    *Held*, that this court is not called upon to cull out a particular part of testi-
    mony to which objections may not apply.  See example.................. 356

5. Testamentary Capacity—Former Declarations.

    Where the issue is want of capacity of the testator to make a will, it is per-
    missible to prove his declarations made antecedent to the time of making
    the will showing an intention to make such disposition of the property as
    was finally made by the will.  The exclusion of such evidence in case of
    conflicting evidence is ground for reversal of the judgment against the party
    offering to prove antecedent declarations showing same intent as was sub-
    sequently embodied in the will ........................................ 357

6. Opinion of Witness as to Mental Capacity to Make a Will.

    An interrogatory was propounded to witnesses as follows:  "From what you
    saw and observed of Mrs. Lizzie Brown, deceased, her talk and actions,
    and her mental and physical condition during the last ten or twelve days
    of her illness, and at the time of the execution of said instrument of writ-
    ing, do you think that she had sufficient mental capacity to declare her
    last will and testament and dispose of her property?"  Answer:  "I do
    not think she was capable of making her will.  All day she had been out
    of her head, talking about dead babies, and asking if they were putting
    them on ice, and if the hearse had come.  We dressed her before she signed
    the will.  She was very weak, and we had to lift her up."  This raises the
    question of law, Can a witness, after giving the facts, state his opinion as
    to the legal capacity of a person to make a will?  After a discussion of the
    authorities, it is held, that it is incompetent for the witness to give his
    opinion as to the legal capacity of the deceased to make a will ........... 358

7. Opinion as to Mental Condition of Testator.

    We consider, that the decisions of our court establish the rule that all wit-
    nesses, whether subscribing witnesses, experts, or others who know the
    facts, and having stated such facts, may express opinions, founded upon
    their own knowledge as to the mental condition of a testator............. 363

8. Mental Condition—Legal Capacity.

    It is important to keep up the distinction between the opinions of witnesses
    upon a mental condition, as sanity or insanity and the like, which are al-
    lowed by nearly all of the authorities, and such opinions when directed to
    the question of legal capacity to perform the act in question ... ......... 364

9. Opinion of Witness as to Legal Capacity.

    We think that the authorities cited, upon established and sound principles
    of law, will maintain the conclusion as correct, that no witness will be
    permitted to testify to a legal conclusion from facts given either by himself
    or testified to by another.  It is the province of the jury, from the testi-
    mony, to find the facts; but it is the duty of the court alone to inform the
    jury as to the rule of law by which they are to be governed in determin-
    ing upon the sufficiency of the facts given to them by the witnesses....... 367

ERROR to Court of Civil Appeals for Second District, in an appeal
from Tarrant County.

This suit was originally instituted in the County Court of Tarrant
County, Texas, at the November Term, 1886, by appellees, John
Mitchell and Lizzie Winters, joined by the latter's husband, J. W.

Winters, to set aside a former judgment of said court entered on the probate docket at the July Term, 1886, probating a certain written instrument as the last will and testament of Mrs. Lizzie Brown, deceased wife of appellant, and granting letters testamentary to appellant; appellees alleging in their petition, in substance, that said will so probated was executed by deceased on or about the 27th day of August, 1885, a few days prior to her death, by the terms of which she bequeathed all of her property, consisting of her interest in the community, to her surviving husband, the appellant, and making him independent executor, etc.; that the appellees, John Mitchell and Lizzie Winters, were the only children and heirs of deceased; that at the time of executing the will, the deceased was so weakened by disease as to be mentally incompetent to make a will, and that appellant and others exercised undue influence over the deceased in order to procure the execution of the instrument; and praying that the probate of the will be set aside and the same be declared null and void, and that the letters testamentary issued to appellant be revoked.

Appellant answered by general demurrer, special exceptions, and general denial; and also averred, that the will in controversy was the true and last will and testament of deceased, and that at the time of executing the same the deceased was of sound and disposing mind, and that the deceased executed the same with all due formality, of her own free will and volition, and without the exercise of any influence whatever on the part of appellant or any one else, and that the same had been duly in all things probated. Appellant also denied that appellees, or either of them, were the lawful heirs of deceased.

On the trial of the cause before the County Court it was decided favorably to the contestants. On appeal to the District Court of said county on the first trial the jury failed to agree, and a mistrial resulted. On the second trial it resulted in favor of contestants, but on appeal to the Supreme Court the case was reversed and remanded for a new trial. At the January Term, 1892, said cause coming on for trial, the court, on hearing appellant's special exceptions to all of the averments of plaintiffs' petition setting up undue influence at a former term, again overruled them.

The death of the plaintiff J. W. Winters being suggested by the plaintiffs, it was ordered, that the cause proceed in the name of the two remaining plaintiffs, the appellees. On the trial of the case the jury returned a general verdict, finding in favor of the plaintiffs. The court rendered a judgment thereon accordingly, setting aside the probate of the will, adjudging the same void, and cancelling the letters testamentary issued to appellant. The appellant filed a motion for a new trial, which being by the court overruled, he excepted and appealed. The judgment was affirmed by the Court of Civil Appeals. [Statement by plaintiff in error, accepted by defendant.] The opinion states the facts discussed.

*F. M. Brantly* and *D. W. Humphreys*, for plaintiff in error.—1. The answer of the witness to the twelfth interrogatory, giving her opinion of the capacity of the testatrix to make a will, was not competent or admissible, for the reason that the question called for a conclusion of law and facts; nor did it appear that the witness was informed of the amount or measure of capacity the law required to constitute testamentary capacity. Purnell v. Gandy, 46 Texas, 191; Gherke v. The State, 13 Texas, 568; Laws. on Exp. and Op. Ev., p. 137; Abb. Trial Ev., p. 118; Fairchild v. Bascom, 35 Vt., 398; In re Arnold, 4 Hun, 525; In re McCarthy, 55 Hun, 7; Gibson v. Yerger, 9 Yerg., 329; Kempsey v. McGinnis, 21 Mich., 141; Terrall's Admr. v. Brennan's Admr., 32 Mo., 328; Schneider v. Manning, 121 Ill., 376; Railway v. Kuehn, 1 Texas Civ. App., 215; Runyan v. Price, 15 Ohio St., 1; 1 Rice on Ev., p. 364; Walker v. Walker, 34 Ala., 469; 1 Whart. on Ev., sec. 507; Busw. on Insanity, sec. 247; De Witt v. Barley, 9 N. Y., 371; Id., 17 N. Y., 340; Hewlett v. Wood, 55 N. Y., 634; Pelamourges v. Clark, 9 Iowa, 16.

2. The record of the adoption should have been excluded. There was no proof offered that such execution, acknowledgment, or record thereof was authorized by or in compliance with the laws of the State of Michigan. The grounds of the defendant's objections to the introduction of said writing were, (1) that the same did not appear to have been duly executed and acknowledged by the deceased; (2) that the execution and acknowledgment were not in compliance with the laws of the State of Texas; (3) that there was nothing before the court to indicate that there was any statute of the State of Michigan authorizing such a proceeding, or that the same was in compliance with the laws of such State; (4) that it appeared that at the time of such alleged act of adoption the deceased was a married woman, laboring under the disability of marriage, and could not enter into such a contract; (5) nor was there any proof that the laws of Michigan permitted a married woman to enter into a contract of adoption. Rev. Stats., arts. 1, 4310, 4313; Smith v. Smith, 1 Texas, 625; Franks v. Hancock, 1 Posey's U. C., 564; Green v. Rugely, 23 Texas, 540; 46 N. J. L., 271; Ferguson v. Jones (Ore.), 3 L. R. Ann., 620; Austin v. Davis (Ind.), 12 L. R. Ann., 120; Long v. Brown, 66 Ind., 160; Hodson v. Davis, 43 Ind., 258; Daily v. Morris, 31 Ind., 111; Morse v. Presby, 25 N. H., 302.

3. The court should have excluded the testimony of the witness to the fact of his being the son of the testatrix, and of the fact of his being nursed by her; for the reason, that it appeared that such information of the witness was derived from the deceased, and constituted statements by and transactions with the deceased to and with the witness. Parks v. Caudle, 58 Texas, 216; Reddin v. Smith, 65 Texas, 26; 1 Redf. on Wills, sec. 36, par. H, p. 548; Roberts v. Trawick, 17 Ala., 55; Rogers v. Crain, 30 Texas, 284.

*Ball, Tempel & Ball, H. M. Chapman,* and *C. M. Templeton,* for defendants in error.—1. Upon an issue of insanity, or the lack of mental capacity to make a will, nonprofessional witnesses will be permitted to state their opinions, together with a statement of the facts upon which their opinions are based. Brown v. Mitchell, 75 Texas, 9, and authorities cited; Thomas v. The State, 40 Texas, 60; Cockrill v. Cox, 65 Texas, 669; Garrison v. Blanton, 48 Texas, 300.

2. The articles of adoption introduced in evidence were accompanied by a certified copy of the judgment of the Probate Court of Wayne County, Michigan, and in the absence of evidence to the contrary, it will be presumed that the court had jurisdiction of the subject matter, and that its proceedings were legal. Brown v. Mitchell, 75 Texas, 9; Bryant v. Kelton, 1 Texas, 436.

3. The court did not err in refusing to exclude the testimony of appellee, John Mitchell, as the same did not pertain to "any transaction with or statement by the deceased."

BROWN, ASSOCIATE JUSTICE.—Lizzie Brown and George B. Brown were husband and wife, and during the continuance of their marriage acquired certain property. Lizzie Brown executed a will giving all of her property to her husband, George Brown, and afterwards died, in Tarrant County, Texas. This will was admitted to probate in Tarrant County.

George B. Brown and his wife Lizzie at one time resided in the State of Michigan, in which State, during the marriage, they adopted a girl child, afterwards known as Lizzie Brown, which adoption was evidenced by a certain writing and a judgment of a Probate Court of that State. John Mitchell claimed to be the son of the deceased Lizzie Brown.

John Mitchell and Lizzie Winter, formerly Lizzie Brown, the adopted daughter of George Brown and wife, instituted this suit in the District Court of Tarrant County to set aside the probate of the will of Lizzie Brown, deceased, because of the alleged fact that Lizzie Brown, at the time of making the will, was not of sound mind, and had not mental capacity to make the will. The trial in the District Court resulted in a verdict and judgment setting aside the probate of the will, and holding that it was of no effect. Upon appeal, the Court of Civil Appeals first reversed the judgment of the District Court and remanded the cause, but upon a motion for a rehearing, set aside that judgment and affirmed the judgment of the District Court.

This case is presented to this court upon the following grounds of error:

That the Court of Civil Appeals erred in refusing to sustain assignments presenting the following objections to the judgment of the District Court:

1. That the District Court erred in refusing to suppress certain interrogatories propounded to Mrs. Livingston, and the answers thereto.

2. That the court erred in admitting the answers of Mrs. Livingston and Mrs. Berquest to interrogatories concerning the mental capacity of the testatrix, because the said answers were the conclusions of the witnesses as to matter of law and fact.

3. That the court erred in admitting in evidence the copy of the proceedings in the Probate Court in Michigan concerning the adoption of Lizzie.

4. The court erred in admitting the testimony of John Mitchell as to certain facts tending to show that he was the son of the testatrix.

5. In excluding the evidence of W. R. McLaury of declarations made by the testatrix before her last sickness as to the manner in which she intended to dispose of her property by will; and also as to his having, at her request, prepared a will of the same import as the one probated.

6. In refusing to give the following special charge asked by the defendant: "The jury are further instructed, that the law does not require the same amount of mental capacity to make a valid will as to make an ordinary contract. The only capacity the law requires is, that the testatrix shall, at the time of making or executing the will, know or understand what she is about, and to whom she is bequeathing or devising her property."

The first and second grounds of the application for writ of error in this case are not so presented in the record as to call upon this court to examine into the correctness of the ruling of the District Court upon the matters to which they relate. The motion to suppress the deposition of Mrs. Livingston does not set out the questions nor answers to which objections are made, and there is no bill of exceptions in the record showing the form or substance of either. It is true that the Court of Civil Appeals finds the form of the twelfth interrogatory and the answer thereto, which is likewise stated in the appellee's brief, but the record does not show that the District Court overruled the motion as to the twelfth interrogatory and the answer thereto; and there appears to have been no objection at the trial to the introduction of the testimony of either Mrs. Livingston or Mrs. Berquest. We are referred to bills of exceptions numbered 4 and 5 in connection with these objections, but the pages of the record on which those bills of exceptions should appear are blank.

The third objection, which relates to admitting in evidence a copy of the proceedings of a Probate Court in Michigan, concerning the adoption of the child Lizzie, was decided by this court, on the former appeal, against the contention of plaintiff in error, upon the ground that this court would presume jurisdiction in the court rendering the judgment, until the contrary should be made to appear by testimony offered by those who deny that the court had jurisdiction. No such testimony appears in this record, and we therefore hold, that there was no error in admitting that record. Brown v. Mitchell, 75 Texas, 13.

The sixth ground relied upon is untenable.   There was no reason to inform the jury that the law required a less amount of capacity to make a will than an ordinary contract.   The jury would not be presumed to know what degree of capacity the law required to make a contract, and therefore could not make any proper comparison between the capacity of the testatrix, as shown by the evidence, and that which the law would require to enable her to make a binding contract.

John Mitchell, one of the plaintiffs, testified on direct examination, that he was the son of Lizzie Brown.   The defendant's counsel then asked the witness from what source he derived the information that the testatrix was his mother; to which he answered, "Because she always called me her son."   In answer to questions propounded by the plaintiffs' counsel, he stated, in substance: "I remember when I was a small boy that she nursed me.   During my childhood and boyhood there was no question about my being her son, until this case came up."   Whereupon defendant moved the court to exclude all of the testimony of the said witness relative to his being the son of the testatrix, for the reason that the same referred to and stated transactions between the plaintiff and the deceased, and statements by the deceased, and was incompetent, and not pertinent to the issues in the case.

It appears, that the testimony of the witness was positive to the effect that he was the son of Lizzie Brown.   That this was based in part upon Lizzie Brown's calling him her son; but it does not appear that it was based wholly upon that fact.   The motion of the defendant was to exclude all of the testimony of the witness; this the court could not do.   In the case of Hill v. Kerr, 78 Texas, 217, the witness had testified to the fact, that certain field notes were filed in the General Land Office on a given date.   Upon motion of the defendant the testimony was excluded, and this court said: "As to the fact and date of the return of the field notes, we fail to see the force of the objection.   It was probably intended to object to the evidence, upon the ground that the witness was testifying from the papers and records in the Land Office, and not from his personal knowledge.   But such does not appear to be the case.   He testifies positively to the fact, and in the absence of some evidence showing the source of his information, we have no right to assume that he was not present when the certified copy of the field notes was filed.   Other portions of his deposition render it probable that he was testifying in part, at least, from the records and memoranda of his office; but that does not justify the exclusion of so much of his testimony as is a direct and positive statement of a fact within his own knowledge."

In this case, it appears that the testimony of the witness was based upon other grounds than statements made by the deceased, if her utterances are to be so regarded; and if the defendant desired to exclude the answer, that the deceased "always called him her son," the motion should have applied to that portion.   The court was not called upon to cull out a particular part of the evidence upon a motion to

exclude the whole, nor would it have been correct to exclude the positive statement of the witness not shown to be based solely upon the objectionable statement.

The manner in which the question is presented does not call for an expression by this court as to the competency of the plaintiff, claiming to be an heir of the deceased, whose will was in controversy, to testify to statements made by the deceased tending to establish his heirship; and we therefore leave that question undecided. We have serious doubts that the calling of a child "son" is a "statement," within the meaning of the law.

Plaintiff in error offered to prove by W. R. McLaury, that about one year before Mrs. Brown died, and at another time, about six weeks before her death, she consulted with the witness with reference to making her will, and stated to him that she desired to make a will, leaving all of her property to her husband, George B. Brown. Also, that in pursuance of the last interview the witness prepared a will in accordance with her instructions, in substance the same as that in controversy, which was not executed on account of the interference of her husband, George B. Brown. That after preparing the will, witness went to the bedroom of the testatrix for the purpose of having the same executed, and when he was about to secure witnesses to the will, the plaintiff in error, the husband of the testatrix, objected to its execution, saying that she did not need to make a will then. It does not appear from the testimony or the bill of exceptions that the will so prepared was either read by the testatrix or that it was read to her by any one, nor that she was informed of its contents. This evidence was excluded by the court.

When the issue is want of capacity of the testator or testatrix to make a will, it is permissible to prove his or her declarations made antecedent to the time of making the will, either showing an intention to make such disposition of the property as was finally made by the will, or to prove to the contrary. Pancoast v. Graham, 15 N. J. Eq., 294; Titlow v. Titlow, 54 Pa. St., 216; Davis v. Rogers, 1 Houston (Del.), 93; Roberts v. Trawick, 17 Ala., 58; 1 Redf. on Wills, 548.

In the case of Roberts v. Trawick, cited above, the court said, with reference to like declarations offered and excluded: "This proof conduced to establish that the testator, many years previous to the execution of the will in controversy, had a fixed and settled purpose to make a will similar to the one he is alleged to have executed. It was then proper, as rebutting the evidence on the part of the contestants, to show that the will was not the deliberate act of the deceased, but was obtained fraudulently, or by the overpersuasion of his wife or others. It tends to show, that the provisions in the will which excluded the daughters were not the result of any suggestions made at or near the time when the will was drafted, but that some ten years anterior thereto, the testator declared his intention then to disinherit his daughters, which intention was repeated five years afterwards." It is true, that

ordinarily such declarations become less cogent as the time increases between the declaration and the making of the will; but on the other hand, when the declarations have been repeated from time to time, showing a continuation of the intention to make such disposition of the property, it becomes important, as showing a fixed and well matured intention on the part of the testator, and would tend to show, that the testator, having matured his purpose at a time when his mind was free from any weakness and his body free from disease, would the more readily comprehend the contents of an instrument which embodied that which he had already thoroughly mastered.

We think that the directions given by Mrs. Brown to the attorney, W. R. McLaury, should have been admitted in evidence, and that in the state of the testimony upon the issue of capacity to make the will, it was material to the defendant to that degree that renders it necessary that this judgment should be reversed and the cause remanded, for the error of the court in excluding the evidence.

If the testimony had shown that the will prepared by McLaury was either read by Mrs. Brown or read to her, or its contents made known to her, and that it was approved by her, then the proof of the contents of that will should have been admitted in evidence; but we are not able to say, from the bill of exceptions and the evidence, that this testimony was clearly admissible. This question was certified to this court by the Court of Civil Appeals, but the certificate did not disclose the fact that the contents of the will had ever been made known to the testatrix, and for that reason we answered, that under the statement made we did not consider the testimony admissible.

Having determined that the judgment in this case must be reversed and the cause remanded, we will, in view of another trial, pass upon the objections made to the testimony of Mrs. Livingston and Mrs. Berquest, although not properly presented, as before stated.

The interrogatory propounded to Mrs. Livingston, and her answer thereto, as found by the Court of Civil Appeals, will fairly present the question as to both witnesses. The interrogatory was as follows: "From what you saw and observed of Mrs. Lizzie Brown, deceased, her talk and actions, and her mental and physical condition during the last ten or twelve days of her illness, and at the time of the execution of the said instrument of writing, do you think that she had sufficient mental capacity to declare her last will and testament, and dispose of her property?" Answer: "I do not think that she was capable of making her will. All day she had been out of her head, talking about dead babies, and asking if they were putting them on ice, and if the hearse had come. We dressed her before she signed the will. She was very weak, and we had to lift her up."

This question and answer present for our consideration the proposition of law, Can a witness, after giving the facts, state his or her opinion as to the legal capacity of a person to make a will? Upon this question there is much apparent conflict of authority and considerable

confusion, arising out of a want of a clear and precise statement of the question to be decided in each case.

In our Supreme Court three cases have been decided bearing upon this question, upon which the defendants in error rely to support the ruling of the court in admitting this testimony.

Garrison v. Blanton, 48 Texas, 299, is the leading case in our State upon this question. Chief Justice Roberts wrote the opinion, in which he discussed the question before the court to greater length and with more care than has been done in the subsequent cases. We have not been able to find the original record, so as to determine the exact question before the court, but from an examination of the opinion of the eminent jurist who prepared it, we conclude that the point now before this court was not in the mind of Judge Roberts or the court in the determination of that case. After detailing the facts as stated by the different witnesses, Judge Roberts says: "We can not say in this case that there was a want of sufficient evidence to sustain the verdict of the jury as to her want of capacity. The witnesses gave their opinions, that she had not the mental capacity to make a will. It was their conclusion, from her appearance and from the concurring facts detailed by them, that entered into the formation of their opinion, as it is styled. It is not thought material whether the witnesses detailed the describable facts upon which their conclusion was founded before or after the expression of their opinions. Had they detailed them before, it would hardly have fallen within the province of the judge to have excluded their opinions, because he did not either understand the force of the facts detailed to establish their conclusion, or did not fully agree with them in their conclusions from the facts detailed by them."

That learned judge then proceeds to cite an instance in which the witness was allowed to give his opinion as to the question of insanity, citing 40 Texas, 64. Also, a case in which the witness gave his opinion as to the incapacity of a party to make a contract, on account of drunkenness, citing Reynolds v. Dechaums, 24 Texas, 174. This is the full discussion of that question as embodied in that opinion.

It appears to us, from an examination of this case, that the two leading questions in the mind of the judge were the sufficiency of the evidence, and the necessity for the witnesses to detail the facts before they stated their conclusions. It does not appear that any objection to the legal capacity of the testatrix being passed upon by the witnesses in the expressions of their opinions, was in the mind of the court; the discussion of such a question by that learned judge would have assumed a very different form and scope of investigation to that which appears in the opinion written by him. The fact that he reasons from the analogy of a witness stating his opinion as to insanity, is another proof that this proposition was not in his mind, because an opinion as to sanity or insanity does not express a legal conclusion, but is simply an opinion as to a mental condition, which is allowed in this class of cases by nearly all courts.

In the case of Reynolds v. Dechaums, cited in that case, there appears to have been no objection made to the opinion of the witness as given in evidence, and its admissibility is not discussed. We therefore conclude, that the case of Garrison v. Blanton does not decide the question presented by this objection.

The next case relied upon is that of Cockrill v. Cox, 65 Texas, 669. The opinion was written by Judge Robertson, in which he disposes of the question in these words: "There was no error in allowing the witness Tuttle to state his opinion of Mrs. Byler's capacity to make a will, after he had testified to the facts upon which the opinion was predicated," citing Garrison v. Blanton.

The report in this case does not show what objection was made to the testimony of Tuttle; but from the opinion, it would appear that it could not have been the same as here presented, because it is stated in the opinion that it was not error to permit the witness to give his opinion, after he testified to the facts. It is clear, that the precise question now before the court was not then under consideration.

When this case was before this court on former appeal, 75 Texas, 13, the admissibility of the testimony of the same witness was presented upon an objection which might have raised the identical point under consideration. Judge Stayton prepared the opinion of the court, and disposed of the question in this short paragraph: "Mrs. Livingston, who was present when the will was executed, stated fully the condition of Mrs. Brown at that time, her appearance and conversation, and the court did not err, in connection with this evidence, in permitting the witness to give her opinion as to her mental capacity at that time." Citing Garrison v. Blanton; Cockrill v. Cox; Buswell on Insanity, secs. 240–249; 1 Redf. on Wills, pp. 140–145.

Referring to Buswell on Insanity, sections 240–249, it will be seen that the question here presented is not there treated of, but there appears to be in the mind of the author the distinction between the right to have the subscribing witnesses testify as to their opinions of the mental condition or capacity of the testator or testatrix, to the exclusion of other nonexpert witnesses. This is made more apparent by referring to section 247 of that author, in which he states the distinction as drawn by the New York courts, and says: "The same rule has been adopted elsewhere, and it would seem clearly to be sound, as resting upon the principle that witnesses shall not be permitted to express opinions upon a specific issue, to the trial of which they have been called."

Judge Stayton, no doubt, in the investigation of this question, would have seen the distinction here drawn by the author, to which he refers, if the question under consideration by him had, to his mind, presented the proposition now before this court.

It is likewise true of Mr. Redfield, that in treating of the question on the pages cited by Judge Stayton, the author does not remotely touch upon this question. On page 142, volume 1, Redfield on Wills,

note 8, the author says: "This form of question seems objectionable. The witness should not, we think, whether professional or not, be allowed to pass directly upon the point of inquiry before the jury." The form of question referred to is this: "Whether or not the testator, from defect of understanding, was incapable of making a will."

Thus we see, by referring to these authorities quoted by Judge Stayton, that the distinction was not in his mind in the discussion of that question that is here necessary to be drawn. He simply followed the former decisions of the court upon the question as it was presented at that time.

The Court of Civil Appeals certified to this court in this case the following question: "Whether it is competent for a witness, testifying to mental capacity, to state the following answers to the following questions, over the objection that questions both of law and fact were called for." Here follows the question and answer propounded to Mrs. Livingston, quoted above. To this question the court replied as follows: "Referring to the original record of this case when before this court, we find that substantially the same questions, answers, and objections as are contained in this question were before the court, and it was held that they were admissible evidence. Brown v. Mitchell, 75 Texas, 15. If the evidence showed that the witnesses were cognizant of the facts upon which the opinions were based, the evidence was admissible."

That opinion was prepared by the writer hereof, and in doing so the opinion in the former appeal was followed, without further investigation.

This shows the condition of the authorities in this State upon the question now under consideration; and while we hesitate to overrule decisions heretofore made, we feel that the importance of the question is such, that it is necessary and proper to give to it a careful investigation, and to lay down what we believe to be the correct rule to govern the courts in trials like this in future.

The effect of the question was to elicit from the witnesses the opinion, that the testatrix did not have that degree of mental capacity required by law to enable her to make a valid will.

This rule, if correct, applies not only to wills, but to every character of contracts. If a witness may testify as to the legal capacity of a testator, he may likewise testify to the want of capacity in any person making a deed, a note, or any other contract; and thus we would have a rule of law by which the very question which is submitted to the jury under the direction of the court is to be determined upon the opinions of persons who are ignorant of what the law requires in order to establish the required capacity to contract. If this rule be sustained, then all contracts of every character, as well as wills, are subject to attack, and may be avoided upon opinions given by persons who are wholly unprepared to decide the very question in issue. We

do not believe that this position can be maintained, either on sound authority or sufficient reason.

There seems to be quite a diversity of opinion as to what has been the practice in the courts of England upon the question under consideration.

In Williams v. Spencer, 150 Massachusetts, 347, it is asserted, that "in the common law courts of England, and in many of the States of this country, it is held, that an ordinary witness (that is, one not a subscribing witness or an expert) can not give an opinion, whatever opportunities of observation he may have had;" while, with equal confidence, Judge Campbell, in the case of Beaubien v. Cicotte, 12 Michigan, 505, says: "From the best examination which it has been possible for us to make of the English practice, we are satisfied that in all of the courts, civil and criminal, as well as in the Ecclesiastical Courts, the principle concerning proof of mental condition is the same, and permits all who have had means of observation to testify concerning the existence and measure of capacity with reference to the matter in controversy, while it does not permit those who do not testify from a personal observation to give a direct opinion of capacity, except upon some given hypothesis."

In the case of Wright v. Tatham, 5 C. & P. (England), 701, which was before the House of Lords, Justice Williams, in stating his opinion upon the admissibility of this kind of evidence, said: "Lastly, it is a circumstance of no small weight in determining my opinion upon this part of the question, that, with all the industry and ability of the learned counsel for the defendants below, no single instance has been adduced of evidence of this kind having been admitted in a court of common law. When I reflect upon the frequent occurrence of questions of this kind, and, I must add, the probable existence of such proof in favor of competency, I can not account for its absence, except upon the supposition that it has been assumed and considered to be inadmissible for the purpose for which the evidence was upon the present occasion tendered." This expression was concurred in by others of the nine judges who gave opinions in that case, and was doubted by one only.

It is generally conceded, that in the Ecclesiastical Courts of England great latitude was allowed in the expression of opinion by witnesses, for the reason that the decision of all questions both of law and fact was committed to the judge. This is true of a number of the States of this country, in which States opinions have been delivered containing language broad enough to justify the conclusion that testimony of the character in question was admissible. But when we consider the mode of trial in our courts, wherein questions of fact only are submitted to a jury, under the instruction of the court, it becomes important to observe the distinction between the expression of an opinion as to the mental condition of the party, and his legal capacity; by observing this distinction, much of the confusion and apparent conflict in the

authorities may be reconciled. We conclude, that the difference of opinion as to the practice in the English courts arises from a failure to recognize this distinction, which has not always been borne in mind in treating the question by the courts of the different States.

The authorities are in conflict upon various phases of this question, which it is not necessary here to discuss. We consider that the decisions of our own court, cited above, establish the rule, that all witnesses, whether subscribing witnesses, experts, or others, who know the facts, and having stated such facts, may express opinions founded upon their own knowledge as to the mental condition of the testator. This rule is well sustained by sound reasoning and authority. Beaubien v. Cicotte, 12 Mich., 496; Hardy v. Merrill, 56 N. H., 227; People v. Sanford, 43 Cal., 29; Clary v. Clary, 2 Ired., 84; Pidcock v. Potter, 68 Pa. St., 342; Grant v. Thompson, 4 Conn., 203; Brooke v. Townshend, 7 Gill (Md.), 28; Potts v. House, 6 Ga., 324. The citation of authorities in support of this proposition might be greatly extended, but it is deemed unnecessary.

In Massachusetts and some other States it has been held, that witnesses, other than subscribing witnesses and experts, can not express their opinions as to the mental condition of the testator (Hastings v. Rider, 99 Massachusetts, 624); but this rule seems to have been modified in Massachusetts. Williams v. Spencer, 150 Mass., 348.

It is important to keep before us in the discussion of this question the distinction between opinions of witnesses upon a mental condition, as sanity or insanity and the like, which are allowed by nearly all of the authorities, and such opinions when directed to the question of legal capacity to perform the act in question.

In the case of Kempsey v. McGinniss, 21 Michigan, 141, Judge Christiancy states the distinction in the following clear and precise manner, which we adopt as the best expression of it that we are able to give:

"To what extent and in what manner the mind of the testator was affected by the disease, or what was his mental condition, was a question of fact upon which it was competent for the professional witnesses to express their opinion. But what degree of mental capacity is necessary to enable a testator to make a valid will, to what extent and with what degree of perfection he must understand the will and the persons and property affected by it, or to what extent his mind must be impaired to render him incapable, is a question of law exclusively for the court, and with which witnesses have nothing to do. And it is a question of law of no little difficulty, which calls for the highest skill of competent jurists, and upon which the ablest courts are not entirely agreed. * * * Such opinions must be rendered utterly useless, and become a source of error and confusion, if the professional witness is allowed to fix his own legal standard of testamentary capacity, thus mixing up in the minds of the jury his conclusions upon matters of law, of which he is ignorant, with his conclusions from facts pertaining to his profession, which he claims to understand,

while his professional brother, testifying on the other side, equally competent, comes to directly opposite conclusions upon the same facts. Besides, if each witness is allowed to fix his own legal standard of testamentary capacity, no two of them will be likely to fix upon the same; and there may be an apparent agreement while they differ in fact, and an apparent conflict when there is a real coincidence of opinion; and the jury have no means of knowing the real meaning of the witnesses, or judging of the value of their testimony.

"It may be urged in reply to this, that the confusion arising from allowing the witnesses to answer questions involving their opinion of the legal capacity of a party to make a will, may be cleared up by a cross-examination, ascertaining what, in his opinion, constitutes such capacity, and that any error in this respect may be corrected by the court in his charge, or otherwise. But it seems to me much wiser, wherever it is practicable, to exclude the improper question, and avoid the confusion altogether, than to admit it first, and then undertake to get rid of its effects, an experiment which is never wholly successful.

"I am aware there are many cases in which, upon similar questions, interrogatories have been allowed to be put to the witnesses for their opinion, involving as well their opinion upon the question of law (legal capacity) as upon the question of fact (what the capacity was). In most of them, however, the point I am discussing was not directly raised. And, upon principle, I can see no ground upon which such a course can be justified, when the nature of the case does not render it necessary, and it can, as in the present case, be just as well avoided."

The question now before the court, precisely stated, is, can a witness, whether he be a subscribing witness to a will, an expert, or any other person familiar with the facts from personal observation, testify before the jury that the testator had or had not capacity to make a will?

There are many cases in the reports of the different States which, upon casual reading, would seem to sustain the affirmative of this proposition, of which we cite the following, as being a fair representative of that class of authorities: Hardy v. Merrill, 56 N. H., 227; Beaubien v. Cicotte, 12 Mich., 459; Frizzell v. Reed, 77 Ga., 731; Rambler v. Tryon, 7 Serg. & R., 90; Stuckey v. Bellah, 41 Ala., 707; Clary v. Clary, 2 Ired. (N. C.), 78; Johnson v. Culver, 116 Ind., 289. In each of these cases, language is used by the court, which, taken without reference to the proposition presented for discussion, and disconnected from other portions of the opinion, might justify the conclusion that the court intended to hold that a witness, upon stating facts, might be permitted to express his opinion as to whether or not the testator had capacity to make the instrument in question.

A careful examination of each case, and in fact all of the cases in line with them, will show that the precise question here under examination was not presented to the court for its decision. These cases, and each of them, have reference to either the distinction between the testimony of subscribing witnesses and nonexperts not subscribing wit-

nesses, or to some other distinction not embracing the question of the right to have the witness express an opinion as to the legal capacity of the maker of the instrument. The leading case upon this question, the one most frequently cited to support the claim that such evidence is admissible, is Clary v. Clary, cited above. In that case, the court had under consideration the question whether a nonexpert witness, not a subscriber to the will, could, upon stating the facts, express his conclusion or opinion as to the mental condition of the testator. The reasoning of the court shows most clearly that it was not intended to hold that such witness, or that any witness, could give his opinion as to whether or not the degree of intelligence of the person in question was such as to render him capable of making such an instrument. The court says: "But judgment founded on actual observation of the capacity, disposition, temper, character, peculiarities of habit, form, features, or handwriting of others, is more than mere opinion. It approaches to knowledge, and is knowledge, so far as the imperfection of human nature will permit knowledge of these things to be acquired, and the result thus acquired should be communicated to the jury, because they have not had the opportunities of personal observation, and because in no other way can they effectually have the benefit of the knowledge gained by the observation of others." From this language, it is evident that the court had in mind the expression of opinion of the mental conditions, such as insanity, weakness of intellect, or incapacity to understand the business in which the party was engaged, or something of a similar nature.

In the case of Hardy v. Merrill, supra, Chief Justice Foster, of the Supreme Court of New Hampshire, entered elaborately into the discussion of the question as to whether nonexpert witnesses should be permitted to give their opinions of the mental capacity of a party making a will or contract, after having first stated their knowledge of the facts and circumstances surrounding the person about whom they testified; but in this case, likewise, the question now to be considered was not before the court; and that it was not considered by the court is shown most conclusively by the general rule formulated by the judge, which is as follows: "But if a general rule will comfort any who insist upon excluding and suppressing truth, unless the expression of the truth be restrained within the confines of a legal rule, standard, or proposition, let them be content to adopt a formula like this: Opinions of witnesses derived from observation are admissible in evidence, when, from the nature of the subject under investigation, no better evidence can be obtained." The very rule stated excludes the idea that the judge intended to say that any witness could express before a jury his or her opinion as to the legal capacity of the party engaged in the transaction in question. Opinions derived from observation are not opinions of legal capacity; they are but opinions formed from facts observed by the witness, conclusions of the existence of another fact, as, for instance, that the party observed is insane, weak-minded, strong-

minded, sober, or drunk. In the same case Ladd, J., concurring in the opinion of the court, said: "I think it is shown by proofs which fall little, if at all, short of demonstration, that the doctrine excluding the opinions of nonexperts on the question of insanity has grown up in this State within the memory of men now living in the profession; that it has no place in the common law brought here from England, nor in the jurisprudence or practice in this State, from the Constitution down to comparatively recent date." This last quotation shows conclusively the question that was then before the court, and upon which it passed in that case; and we might continue to review these cases separately, finding that the same result follows from such investigation; that is, that in neither of them did the court have in mind the question we now have for decision. Any language, therefore, which is used in those cases not applicable to the particular question or facts before the court, can not be regarded as authority in this case.

The negative of this proposition, that is, that no witness, whether he be a subscribing witness, an expert, or a nonexpert, will be permitted, over proper objection, to state his opinion of the capacity of the testator or the maker of any contract to make such instrument, when such opinion assumes the shape and has the effect of being an opinion upon the legal capacity of the party in question. The following authorities fully sustain this position: Walker v. Walker, 34 Ala., 469; Kempsey v. McGinniss, 21 Mich., 123; Gibson v. Gibson, 9 Yerg., 329; Runyan v. Price, 15 Ohio St., 1; Schneider v. Manning, 121 Ill., 376; Farrell v. Brennan, 32 Mo., 328; Clapp v. Fullerton, 34 N. Y., 190; Hewlett v. Wood, 55 N. Y., 634; White v. Bailey, 10 Mich., 159; In re Blood's Estate (Vt.), 19 Atl. Rep., 770. In each of the foregoing cases the identical question was before the court and decided upon.

In the case of White v. Bailey, the court said: "The question, we think, was properly excluded. It asked for the doctor's opinion of the mental capacity of the testator some two or three months before he made his will. Mental capacity for what? To make a will, for that was in issue. This is a question of law, and not of medical science. It is for the jury, under the instruction of the court as to what is sufficient mental capacity to make a will, to decide on its existence or nonexistence when the will was executed, from the facts testified to by the witness, and not from the witness' opinion regarding such facts. The jury, and not the witness, are to draw the conclusion from the facts stated by the witness. The opinion of a physician as to the existence of disease or a particular malady, and its effect upon the mind, would be evidence. But a physician's opinion regarding mental capacity generally, or the mental capacity necessary to make a will, is, in the eye of the law, no better than that of any other person." In the case of Walker v. Walker, Judge Stone said: "Capacity to make a will is not a simple question of fact. It is a conclusion which the law draws from certain facts as premises. Hence, it is improper to ask and obtain the opinion even of a physician as to the

capacity of any one to make a will. Under our system that question was addressed to the jury." In the case of Farrell v. Brennan, it is said: "The question is objectionable, as tending to elicit from the witness his opinion as to the quantum of intelligence, or mental capacity, necessary to enable a party to make a legal disposition of his estate. In other words, it involves a question of law for the court to determine, and not the witness. Witnesses who have had opportunities for knowing and observing the conversation, conduct, and manners of the person whose sanity is in question, may depose not only to particular facts, but to their opinions or belief as to the sanity of the party, formed from actual observation." All of the cases cited above in support of this proposition might be quoted from to the same effect.

The facts stated by Mrs. Livingston, as shown by the bill of exceptions, were: "All day she had been out of her head, talking about dead babies, and asking if they were putting them on ice, and if the hearse had come. We dressed her before she signed the will. She was very weak, and we had to lift her up." Upon this statement of the facts the witness was permitted to state, that in her opinion the testatrix did not have capacity to make the will in question. Under the same ruling, if a physician had been called upon the stand, and these facts had been stated to him as a hypothetical case, he might have given it as his opinion that the testatrix had capacity to make the instrument; whereas, in case a lawyer of learning had been placed upon the stand and had been asked the same question upon the same state of facts, he would not have been allowed to give his opinion. Such a rule involves the absurdity of permitting those who are ignorant of the law to give an opinion as to what the law requires, while it excludes the opinion of the only class who may be supposed to be able to give an intelligent opinion on the subject.

We think that the authorities cited, upon established and sound principles of law, will maintain the conclusion as correct, that no witness will be permitted to testify to a legal conclusion from facts given either by himself or testified to by another. It is the province of the jury, from the testimony, to find the facts; but it is the duty of the court alone to inform the jury as to the rule of law by which they are to be governed in determining upon the sufficiency of the facts given to them by the witnesses. The conclusions or opinions to which witnesses may testify in this character of cases are simply to be treated as facts presented to the jury by means of the conclusions drawn by the witnesses from their observations, for the reason alone that the facts are of such character that they are incapable of being presented, except by stating conclusions drawn from observation.

It is due to the Court of Civil Appeals to state, that in this case the judgment of the court below was first reversed by that court upon the ground of error in admitting this testimony, and Judge Stephens in his opinion clearly stated the legal objection to this character of evidence. But upon a motion for rehearing, in accordance with the opin-

ion of this court upon certified questions, the Court of Civil Appeals affirmed the judgment from which this writ of error is sued out, and which judgment we now reverse.

Although the certified question from the Court of Civil Appeals to this court stated that a copy of the opinion of that court accompanied the question, the opinion, in fact, was not before this court; neither was there a copy of the brief of counsel for either party.

We believe, that in so far as the former decisions of this court may be understood as holding that this testimony was competent and admissible, over the objection that it expressed a legal conclusion, they are not supported by sound authority, nor sustained by correct legal principles, and we are constrained to overrule those cases, in so far as they may be so understood.

For the errors indicated in this opinion, the judgments of the District Court and Court of Civil Appeals are reversed, and this cause is remanded to the District Court for trial in accordance with this opinion.

*Reversed and remanded.*

Delivered June 17, 1895.