Waggoner CARR, Attorney General of the State of Texas, Appellant,

v.

Oliver RADKEY et al., Appellees.

No. 11238.

Court of Civil Appeals of Texas.

Austin.

Nov. 18, 1964.

Rehearing Denied Dec. 9, 1964.

Waggoner Carr, Atty. Gen., Austin, J. S. Bracewell, Ben M. Harrison and Wayne R. Rodgers, Asst. Attys. Gen., for appellant.

J. C. Hinsley, Arthur P. Bagby, John C. Foshee, Allen, Ashton & Kidd, Austin, for appellees.

ARCHER, Chief Justice.

This is a will contest participated in by the Attorney General by virtue of Article 4412a, Vernon's Ann.Civ.St.

The will is a holographic one and the jury, in response to issues, found that the will was wholly in the handwriting of the testatrix, but that the testatrix did not have testamentary capacity when the will was executed on December 28, 1936.

By the terms of the will bequests were made to the University of Texas for scholarships, effective at the date of the death of the third generation of the testatrix's nieces and nephews. The Attorney General is prosecuting this appeal by virtue of the statute.

The will is as follows:

## APPENDIX B

### TYPEWRITTEN COPY OF HOLOGRAPHIC WILL OF DECEMBER 28, 1936, OF HATTIE W. HEWLETT.

"State of Texas  
"County of Travis      "Know All  
Men By These Presents:  
"That I, Hattie Willie Hewlett  
being of sound mind  
and competent under-  
standing and deposing  
mind make this my last  
will, testament and state-  
ment, owing to great sufferings,  
trials and tribulations that  
have recently befallen me:—  
1:—I hereby request that all my  
just debts be first paid.  
2: That whatever is left of any  
nature whatsoever belonging  
to me I hereby bequeted, will  
demise and grant uncondi-  
tional and without any restric-  
Page 2    tions whatsoever to the Uni-  
versity of Texas by its President,  
Dean of Men of Students' Life  
and Dean of Women Students'  
Life to be held in trust for the  
use ∧ and benefit of my two (2) nieces—Harriet  
Louise Brame Miles and  
Louise Ara Martin Miles and  
three (3) nephews—Oliver Henry  
Radkey, Godfrey Hewlett Martin  
and Hewlett Browning Martin  
to the third generation. If any  
one or more of them die without  
issue, then their undivided one-  
fifth part shall go direct to  
the said University of Texas,  
the proceeds thereof to be used to  
establish (A First) a scholarship in Law  
in Honor of my Father, David  
Hubbard Hewlett, for a Senior Student  
    worthy thereof to complete his education  
(B2) Second to establish a Scholar-  
ship in Music in honor of my

Page 3    Mother, Louisa Frances Glasson
Hewlett to be given to a ∧ worthy Senior Student
to complete the last student year
3 C ~~Third to establish~~ a scholarship
in Business Education in honor
of my only Brother, David Glasson
Hewlett to be given to a Senior
Student worthy thereof to complete
the student year.
4 (D) ~~Fourth~~ to establish a scholarship
in Education in Honor of my sister,
Sarah Hewlett Radkey for a
Senior student worthy thereof
to complete his student year.
5 (E) ~~Fifth~~ to establish a scholarship
in Home Economics in Honor of my
sister Louise Shelley Hewlett Brame
to be given to a Senior student to
complete the last student year.
3 :—The above said belonging of
Hattie Willie Hewlett is so bequethed,
demised and granted uncondi-

Page 4    tionally believing the said above
mentioned President, Dean of
Men and Dean of Women will
accept same in the spirit in
which it is given and at my
death will take over all my
belongings and handle same
to the best interests of all
parties concerned keeping same
in tact and all real estate in
complete repair and first class
~~in~~ ∧ ~~each and every respect~~ condition in each
and every respect in any and all
times.
3 :—I, Hattie Willie Hewlett request that
the courts have nothing whatsoever
to do with our said estate except
that which is necessary to the filing
and probation of this my last will,
testement and statement.
Witness my hand at Austin, Texas
this the 28th day of December AD 1936.
Hattie Willie Hewlett"
( ∧ indicates word or words inserted.)

*worthy thereof*

The appeal is based on eight points of error and are that the court erred in not granting the motion for judgment non obstante veredicto, upholding the will of December 28, 1936; in refusing to instruct the jury that even though they believed the testatrix insane, if she executed the will during a lucid interval, they should find in favor of the testamentary capacity; in sustaining contestants' objection to the testimony of Dr. Hoerster; in allowing contestants Miles and Radkey six challenges each to the jury over objections of appellant; in permitting Jack Hewlett, Administrator, to testify as to transactions with the decedent; in permitting contestants to introduce into evidence the order of the Probate Court finding testatrix of unsound mind; in not instructing the jury that less mental capacity is required to execute a will than to execute a contract; and finally, in overruling in part a Motion to Retax Costs.

The testatrix was about 62 years old when the wills were written in 1934 and had never married. She had accumulated in excess of $50,000.00 when she died on December 14, 1960 in a private sanitorium at the age of 86 years, some twenty-four years after the writing of the wills.

Miss Hewlett was taken to Brown's Rest Home on December 7, 1936, and was there on December 28, 1936, the date of the last will, but had not been legally adjudged as a person of unsound mind until January 18, 1937 and J. T. Hewlett was appointed guardian of the person and estate of Hattie W. Hewlett and letters issued, etc.

On August 23, 1961, J. T. Hewlett filed his application to be appointed administrator of the Estate of Hattie W. Hewlett, deceased. The applicant alleged that Hattie W. Hewlett, deceased, left two instruments written wholly in her own handwriting, one dated April 17, 1936 and the other dated December 28, 1936; that in the opinion of applicant neither of the documents were written at a time the decedent, as such testatrix, was competent to make a will and suggested that under Article 4412a, Section 2, subd. a, V.A.C.S., that the Attorney General of Texas be made a party. The then Attorney General entered a general appearance.

Oliver H. Radkey filed an answer reciting his kinship to the deceased and as a beneficiary under the wills and stated that such are not the wills of the deceased and not valid because Miss Hewlett was not of sound mind; and, pleading in the alternative, that if either of the wills was to be admitted to probate, that the will dated April 17, 1936 should be admitted.

Harriett Louise Brame Miles answered and opposed the probate of the will dated December 28, 1936 because the testatrix did not have the mental capacity to execute the will.

On June 8, 1962, the will dated December 28, 1936 was denied probate and likewise the will dated April 17, 1936 was denied probate by the Judge of the County Court.

The Attorney General gave notice of appeal to the District Court in which trial was had with the aid of a jury and in answer to Issue No. 1, the jury answered the will dated April, 1936 was written wholly in the handwriting of Hattie Willie Hewlett and in answer to Issue No. 2 found that she did not have testamentary capacity.

In answer to Special Issue No. 4, the jury found that the will dated December 28, 1936 was wholly in her handwriting and in answer to Special Issue No. 5 found that the testatrix, Hattie Willie Hewlett, did not have testamentary capacity at the time she wrote the instrument.

Based on the verdict of the jury, it was ordered, adjudged and decreed by the Court that the applications for the probate of either or both of said wills be denied.

The Attorney General in his capacity filed a motion for judgment non obstante veredicto upholding the will of December 28, 1936, which was overruled.

It is the theory of the State that the will of December 28, 1936 was such as to necessarily, at least presumptively, imply testamentary capacity, but concedes that no Texas case has been found exactly in point on such position.

The State cites what is contended to be the rule as taken from 94 C.J.S. Wills § 63, p. 768, Lucid Intervals:

"* * * When an insane person writes his own will in his natural manner, and the provisions are sensible, proper, and judicious, the will itself proves that it was written during a lucid interval." The same rule is stated in 57 Am.Jur. 102, § 96.

The rule is also stated in 168 A.L.R. 1001, thus:

"When the will is established to have been made by a testator himself, unaided by others, and when its provisions and expressions are sage and judicious, containing nothing 'sounding to folly,' these facts establish a presumption, even in the case of persons habitually insane, that it was made during the existance of a lucid interval, and impose upon those who attach the will the burden of proving insanity at the moment when it was made * * *"

The same rule is stated in Kingsbury v. Whitaker, 32 La.Ann. 1055, 36 Am.Rep. 278.

The rule is also laid down in the celebrated case of Cartwright v. Cartwright, 1 Phillim.Ecc. 90 (English Reports, Vol. 161, p. 927) as follows:

"* * * the strongest and best proof that can arise as to a lucid interval is that which arises from the act itself; that I look upon as the thing to be first examined, and if it can be proved and established that it is a rational act rationally done the whole case is proved * * * Here is the rational act rationally done. In my apprehension, where you are able completely to establish that, the law does not require you to go further, * * *"

This was quoted in Von De Veld v. Judy, 143 Mo. 348, 44 S.W. 1117, which in turn was quoted approvingly in McCannon v. McCannon, Tex.Civ.App., 2 S.W.2d 942, error dism.

The appellant asserts in his brief that an inspection of the will indicates that she probably had the advice and assistance of a lawyer or a law student, which would not bring the will under the holding in the Kingsbury case "unaided by others."

■ The Court did not err in overruling the motion of appellant for judgment non obstante veredicto.

■ In Texas the burden to show testamentary capacity is on the proponent of a will to show by positive evidence.

■ Where the jury verdict in a will contest that deceased lacked testamentary capacity at time of execution of alleged holographic will was supported by evidence, the verdict was binding on the Trial Court and the Court of Civil Appeals. Greene v. Watts, Tex.Civ.App., 332 S.W.2d 419, no writ history.

■ By its second point the State contends that it was error for the Trial Court to refuse to instruct the jury to the effect that even if the jury believed that the testatrix was insane, if she executed the will during a lucid interval, they should find in favor of the testamentary capacity.

Appellant did not request in writing such an issue and did not tender "in substantially correct * * * explanatory instruction" as required by Rule 277, Texas Rules of Civil Procedure.

We have not had pointed out in the record and we have been unable to find any testimony that the testatrix had lucid intervals, and particularly on December 28, 1936.

There is extensive testimony given by those in charge of the Rest Home where she was staying as to the condition of testatrix as being highly excited and that she did not have lucid intervals in the month of December 1936. The second point is overruled.

The Third Point is that the Court erred in refusing to permit Dr. Hoerster to testify as to his opinion of Hattie W. Hewlett's ability at the time she wrote the will on December 28, 1936 to understand the business she was engaged in, the effect of her act, the objects of her bounty, the nature and extent of her property and to have memory sufficient to collect in her mind the elements of her act.

There is no question that Miss Hewlett suffered mental illness during her life and for some months prior to making the will in question. The issue to be determined by the jury was whether or not at the time she wrote the will she had sufficient mental ability to understand what she was doing as hereinbefore set out.

Appellant complains of the refusal of the Trial Judge to permit Dr. Sam A. Hoerster, Superintendent of the State Mental Hospital, Austin, Texas, to answer a hypothetical question, giving his opinion of Miss Hewlett's ability at the time she wrote the will. The question is long and we will not copy it, but in essence the question recited the history and behavior of the testatrix over a period of time and asked Dr. Hoerster if he had formed an opinion as whether the testatrix, at the time of the writing of the will, had sufficient ability to understand the business in which she was engaged, the effect of her acts, realized what she was doing, knew her people and knew the property she owned.

The contestants objected because the doctor did not know the deceased and because the question asked omitted many facts in evidence.

We do not believe the appellants' case was harmed by the Court's ruling.

The doctor was permitted to and did give his professional opinion that the testatrix was of unsound mind—having a manic-depressive psychosis, with a tendency to remission period of absence of the illness. That a person of unsound mind includes persons who are able at times to understand the nature of their business, the relationship of their family and understand the effect of his acts in making a will.

Dr. Hoerster did testify in reply to a question propounded by the State as to his opinion as to whether or not Hattie Hewlett was of sound mind on December 28, 1936. He testified as follows:

"A    Well, I think that this woman was of unsound mind, and I think that in —by that, I mean, I think she was mentally ill. But I also believe that she had had a type of mental illness which fluctuates from one end of the mood scale to the other. In other words, that she had had periods of elation or manic behavior, and periods of depression; and that her thinking probably went along with her mood, and that at times, would be quite rational, and at other times, not; but this manic depressive—I would consider her to have had a manic depressive illness, psychosis. This is an illness of the mood or the feeling of how a person feels; and the thinking that accompanies this goes along with mood. Most of us recognize this in ourselves. If we are little depressed some morning, our outlook is not as good; and then if we feel pretty good, we don't think we can do anything wrong. But it varies, and this may vary considerably. This usually does not affect memory except that it may, actually—some people, it might increase the memory potential when they are in an excited state, these patients. There are several other reasons why this woman, the description that I have heard, would fit into this category. Admittedly, all categories are empiric, in that they are generalizations. It is not like a pneu-

monia disease, but—we know exactly what the cause and effect is; but we do have a general idea about the categories, and I think that she was mentally ill, but was of this type that would have fluctuations in her mood, where she would be quite lucid and then sometimes she would be quite depressed, and then at other times be quite elated."

Dr. Hoerster testified fully and at length and answered questions covering all the elements in the hypothetical question. The error, if any, was not such as was reasonably calculate to cause the rendition of an improper judgment in this case and is not reversible. Rule 434, T.R.C.P.

Brown v. Mitchell, 88 Tex. 350, 31 S.W. 621, 36 L.R.A. 64.

We do not believe the Court was in error in allowing contestants Miles and Radkey six challenges each to the jury panel over the objections of the Attorney General.

Radkey applied for the probate of the April 17, 1936 will, which was contested by Miles. Under the pleadings, the jury could have been required to determine the issues between them. Each party to a civil suit is entitled to six peremptory challenges under Rule 233, T.R.C.P.

■ The Trial Court must rule on the number of challenges at the beginning of a trial and not wait until the issues have been cast.

Redburn v. Shield, Tex.Civ.App., 338 S. W.2d 323, error dism.; Ralston v. Toomey, Tex.Civ.App., 246 S.W.2d 308, error ref., n.r.e.

In First Nat. Bank of Cuero v. San Antonio and A. Pass R. Co., 97 Tex. 201, 77 S.W. 410, the rule is stated.

By its Fifth Point the action of the Trial Court in permitting Jack Hewlett, Administrator, to testify as to transactions with the deceased is complained of as error.

Radkey called Hewlett, who was temporary administrator, to testify. The Attorney General in his exceptions and objections to the Court's charge stated that every party to the proceeding is an adversary party to Mr. Radkey and that Radkey had freedom to call any of the witnesses as he might desire.

Then there is the question of waiver raised by appellee because the Attorney General did not raise any objection to the testimony of J. T. Hewlett in the County Court and such, if error, is not reversible error.

Wilbanks v. Wilbanks, 160 Tex. 317, 330 S.W.2d 607; Pinchback v. Pinchback, Tex.Civ.App., 352 S.W.2d 151, error ref., n.r.e.

■ Point No. 6 is that the Court erred in allowing contestants to introduce into evidence the order of the Probate Court finding testatrix of unsound mind. We overrule this assignment.

There never was any question but that the testatrix was of unsound mind. Proponent's witness, Dr. Hoerster, so testified as did others. The prime issue to be determined was did the testatrix have a lucid interval when the will of December 28, 1936 was written.

There was introduced by proponents as Exhibit 26, the Inventory and Appraisement of the Estate of Hattie W. Hewlett, N.C.M., and the jury was entitled to know what "N.C.M." meant, and the introduction of the order of the County Court was not reversible error.

31 Tex.Jur.2d 457, Sec. 41, Insane and Incompetent Persons.

■ The Seventh Point is that the Court erred in not instructing the jury that less mental capacity is required to execute a will than to execute a contract. The record does not reflect that appellant made a written request for such a definition.

In Brown v. Mitchell, supra, it was held:

"There was no reason to inform the jury that the law required a less amount of capacity to make a will than an ordinary contract. The jury would not be presumed to know what degree of capacity the law required to make a contract, and therefore could not make any proper comparison between the capacity of the testatrix, as shown by the evidence, and that which the law would require to enable her to make a binding contract."

We do not believe that the Court erred in his order readjusting the court costs. The appellant was contending for the probate of the will and was unsuccessful. The matter of taxing costs is within the sound discretion of the Trial Court. The amount of costs taxed against the appellant is not very great.

Broadway Plan v. Ravenstein, Tex.Civ. App., 364 S.W.2d 741, error ref., n.r.e.; Rules 131 and 141, T.R.C.P.

The record in this case is long and we have endeavored to read and consider it fully and conclude that no reversible error has been shown and that the judgment of the Trial Court should be affirmed.

Affirmed.

HUGHES, Justice (dissenting).

It is my opinion that reversible error was committed by the trial court in not permitting Dr. Sam A. Hoerster to give his opinion as to the ability of testatrix at the time she wrote the December 28, 1936, will to (a) Understand the business in which she was engaged (b) know the effect of her act in writing her will (c) know the objects of her bounty and the claims upon her, and the general nature and extent of her property and (d) have memory sufficient to collect in her mind the elements of the business she was transacting and to hold them long enough to perceive their obvious relation to each other and be able to form a reasonable judgment as to them.

I am further of the opinion that the court erred in not permitting Dr. Hoerster to answer the long hypothetical question propounded to him reciting matters in evidence and concluding:

"Now, Dr. Hoerster, assuming the above to be true, have you formed an opinion as to whether Hattie Willie Hewlett, when she wrote the above will on December 28, 1936, at the time she wrote and signed this will, had sufficient ability to understand the business in which she was engaged, the effect of her acts in making the will, realized what she was doing, knew her people and relatives, and knew the property that she owned; do you have such an opinion?"

If permitted to answer, Dr. Hoerster would have answered these questions favorably to appellant.

It is my opinion that these questions were proper and that the witness should have been permitted to answer them under the opinion of this Court in Fox v. Lewis, 344 S.W.2d 731, writ ref., n.r.e., and the authorities therein cited.

I would reverse and remand this cause; therefore, I respectfully dissent.