Texas & Pacific Railway Company v. Frank Black.

Decided January 20, 1900.

1. **Railway Company—Authority of Brakeman to Eject Trespassers from Freight Train.**

While in this State a brakeman on a freight train is held not to have, perforce alone of his employment as such, the implied authority to eject trespassers from the train, yet such authority is properly implied from evidence showing it to be the common practice for brakemen to eject trespassers from the train, and that this is understood among trainmen to be an obvious duty of the brakeman. Following Railway v. Mother, 5 Texas Civil Appeals, 87.

2. **Same—Collusion as Defense—Pleading.**

In an action by one who was riding on a freight train contrary to the rules of the company, but who had the consent of the brakeman to whom he had paid the fare, and who was knocked off by such brakeman and injured by the train, it is said by the majority of the court that the defense of fraud and collusion between the plaintiff and the brakeman might well be held such as must be specially pleaded by the defendant,—the decision, however, being rested upon the insufficiency of the evidence as to collusion, rather than upon the insufficiency of the pleading.

3.  Same—Evidence of Collusion—Charge—Harmless Error.

See the opinion for evidence held by the majority of the court to fall so far short of establishing collusion between plaintiff and the brakeman as to render the failure of the court to charge upon the issue of collusion harmless error.

4.  Charge of Court—Request for Instruction.

A charge correct so far as it applies to the facts, but omitting to state the law applicable to an issue raised by them, furnishes no ground for reversal unless a proper instruction relating to the matter omitted is asked and refused.

5.  Same—Trespasser—Collusion—Charge Properly Refused.

Requested charges to the effect that if plaintiff paid the brakeman of the freight train to be carried thereon, knowing that it was against the rules of the company for him to go on the train, he could not recover for any willful assault made on him by the brakeman, and that if it was against the rules of the company for plaintiff to be carried on the freight train, and plaintiff, knowing this, paid the brakeman to be allowed to ride thereon, the company would not be liable for any willful assault made on him by the brakeman, were properly refused, since they placed plaintiff beyond the protection of the law, regardless of whether the brakeman was acting in the master's interest, or was in the scope of his duties, and in effect assumed collusion and conspiracy to defraud the company participated in by plaintiff.

6.  Same—Collusive Trespasser Not to Be Unnecessarily Injured.

Collusion between plaintiff and the brakeman to defraud the company would not relieve the company of liability for all acts of the brakeman in relation to plaintiff while he was on the train, but only for such acts as were in furtherance of the conspiracy, since even a trespasser is not to be unnecessarily injured.

STEPHENS, J., dissenting upon the ground that, as the issue of collusion between the brakeman and appellee was tendered by appellee's petition, to which general denial was interposed, and was raised by the evidence, it was erroneous to refuse the special instruction requesting, in effect, its submission to the jury, or at least to charge the jury, in effect, that they might find a verdict for appellee without reference to said issue.

APPEAL from Bowie.   Tried below before Hon: HOWARD TEMPLETON.

*F. H. Prendergast,* for appellant.

*P. A. Turner, L. A. Byrne* and *Smelser & Mahaffey,* for appellee.

STEPHENS, ASSOCIATE JUSTICE.—This appeal is from a recovery of damages in the sum of $10,500 for injuries received by appellee in May, 1887.   He was then a boy of thirteen years.   Suit was brought originally by his guardian, J. H. Haden, who recovered a verdict and judgment in the sum of $12,500, which was reversed on appeal. ‘ 6 Texas Civ. App., 746.   On the last trial he was of age, and recovered the judgment now appealed from in his own name.

In the opinion of Judge Finley on the former appeal, the facts of the case were thus succinctly stated: "Frank Black, a negro boy about 13 years of age, was riding on a freight train by permission of a brakeman, having paid his fare to him.   While the train was in motion, and just before it arrived at Texarkana, the place of destination, the brakeman ordered him to jump off the train.   He refused, stating that he had paid his fare to Texarkana, and intended to ride to the depot.   The brakeman then threw a piece of coal at him, which struck him on the head knocked him from the train, and the wheels of the car ran over his feet, and mangled them so as to necessitate amputation."

The first question raised by the assignments of error is no longer an open one in this case, since it was covered by the opinion on the former appeal, and that too in a manner entirely satisfactory to us. At all events, there was ample evidence on the last trial to warrant the jury in finding that brakemen on appellant's road acted within the scope of their authority in ejecting trespassers from freight trains. The most reasonable interpretation of the testimony is that, while a freight train is primarily in charge of the conductor, who is therefore empowered to eject trespassers, and while it is the office primarily of the brakeman to aid the conductor, and not to take his place, it is nevertheless the common practice on all railroads for brakemen to eject trespassers from freight trains, that being understood among trainmen to be an obvious duty of the brakeman. Indeed, the brakeman, if not allowed to exercise this power at all, would doubtless under some circumstances prove an inefficient aid to the conductor in operating the train, since the presence of trespassers might interfere with the proper discharge of his duties. Although in this and some other States the brakeman is held not to have, perforce alone of his employment as such, the implied authority to eject trespassers from the train, the evidence aliunde of such implied authority in this case was quite as strong as in that of Mother against the same company (opinion by Judge Head, 5 Texas Civil Appeals, 87), in which writ of error was denied.

The next and main contention, in various forms urged by appellant, is that the brakeman, who accepted pay from appellee for the ride from Transcontinental Junction to Texarkana in clear violation of the rules of the company, was acting for himself and against the company, not only in thus taking appellee aboard, but also in ejecting him from the train. As to the effect of such collusion—it being claimed that appellee knew it was against the rules of the company—upon appellee's right to recover, numerous cases have been cited in the briefs, but in none of them was the precise question we are now about to consider determined.

In Elliott on Railroads, however (volume 3, section 1255, page 1963), a late case is cited from the Supreme Court of Minnesota, which is directly in point,—that of Brevig v. Railway, 66 Northwestern Reporter, 403. Brevig paid a freight brakeman 50 cents for transportation to a given station, which was less than the regular fare on a passenger train, and accepted a seat in a box car loaded with machinery, in known violation of the rules of the company. In the course of the journey the conductor locked the car, but this fact is relevant only in explanation of the opinion soon to be quoted. Before reaching his destination Brevig was ejected with undue force, but whether the brakeman who ejected him was the same brakeman who had accepted the bribe or tip and taken him aboard was a controverted issue of fact, and for this reason the judgment of the trial court denying him the right of recovery was reversed and the cause remanded for trial of that issue. In making this disposition of the appeal the court used the following language: "We are of the opinion that the defendant is liable for the wrongful act of its brake-

man in ejecting him in an improper manner, unless the brakeman who did so was the one who let him into the car.   *   *   *   But we are also of the opinion that the brakeman, who conspired with plaintiff to commit a trespass against defendant, had no implied authority, subsequently, to represent defendant in ejecting plaintiff, and that, if he was the brakeman who did eject plaintiff, it was simply the assault of one joint trespasser upon the other, for which defendant is not liable.  This is true whether the conductor had locked the plaintiff up or not.  By plaintiff's own procurement, the brakeman had ceased to be the disinterested servant of the defendant, or, as far as that transaction was concerned, its servant at all.  His motive in driving plaintiff off the train while in motion might have been, not to serve his master, but to cover up his offense against his master.  If there is any doubt as to that, the doubt must be resolved against the wrongdoer.  Plaintiff and the brakeman became joint trespassers at the beginning of the transaction, and it must be presumed that they continued such to the end.  The brakeman's implied authority to represent the defendant in ejecting his confederate had ceased; and if he was subsequently given express authority to eject him, the burden was on plaintiff to prove it.  Then, if the same brakeman whom he bribed to let him into the car drove him out of it, he is not entitled to recover."

Entirely in line with this, and quite as much in point, is the still more recent case, decided by the Supreme Court of Mississippi, of Railway v. Anderson, 27 Southern Reporter, 865.

But while these cases clearly sustain the contention of appellant, it is the opinion of the majority of the court that they are not available to it on this appeal, for reasons which are thus stated by them, in the language of the chief justice:

"Inasmuch as some difference of opinion has arisen among the members of the court as to the proper disposition of this case, the majority deem it proper to indicate briefly their views on the points of difference, other questions upon which we all agree not being here noticed.

"No error has been found in the proceedings below save that of asserted error in the omission in the general charge and in the refusal of special charges, to present the theory of fraud and collusion between appellee and the brakeman inflicting the injury, as supported in the cases above cited.  One of the essential elements of the defense supported by the authorities referred to, and relied upon in behalf of appellant, is one of fraud and collusion between the injured party and the person through whose negligence the injury occurs.  And while this plea may not fall within the technical definition or an estoppel, yet it is in its nature so nearly akin thereto and to the plea of contributory negligence, that we think it might well be held that the defense, to be available, should be specially plead, which was not done in this case.  This is particularly true, it seems to us, in view of the general rule that the particular facts constituting fraud should be plead, and of that other very general rule that the facts constituting plaintiff's cause of action or the defendant's ground of defense should be plainly alleged, to the end that

the opposite party may have notice of and be prepared to meet the same, and not be taken unawares. We therefore gravely doubt the proposition, as is insisted, that the defense here asserted is sufficiently tendered in plaintiff's pleadings so as to be available under the general denial.

"But we do not care to rest our conclusion on this point. We think the evidence tending to raise this issue is on the whole so inconclusive in its nature as to render it altogether improbable that the jury would have found in appellant's favor on this issue, and that therefore the error, if any, is harmless. The facts show that the regular fare was 15 cents from Transcontinental Junction to Texarkana, the point of destination; that appellee was a negro boy about 13 years old. He testifies positively that he was unaware of the rule of the company, which seems to be established by the evidence, forbidding trainmen to permit persons to ride on freight trains. There is no proof of how long such rule had been in force on appellant's road, or the length of time such rule applied between the points in question. Appellee testified to have frequently seen persons riding on such trains. There was no such proof of notoriety of the rule in question, or of appellee's knowledge of appellant's actual practice in this particular, as to support a just inference that appellee swore falsely when he said he knew nothing of it. And his persistence in refusing to get off the train because he had paid his fare, and his complaint, in the throes of the pain caused by his injury, that he had been knocked off after such payment, are strongly corroborative of the fact that appellee was not a party to any agreement or conspiracy to defraud the company. The court was not given the benefit of the testimony of the offending brakeman that there was any such collusive agreement or understanding, or as to the intent or purpose with which he acted. Appellant's evidence was directed almost wholly to the effort to show that such brakeman had no authority to eject trespassers, against which contention the jury found. Appellee paid the amount of the regular fare, and he certainly could receive no pecuniary benefit from any such fraud. No evidence exists of any other necessity or wish to go on that particular train, and we do not believe the evidence now before us would have supported any such defense. See Joske v. Irvine, 91 Texas, 581, et seq.

"But if it be admitted that there was evidence that tended thereto, and that therefore the issue could have properly been submitted, then we say further that it is well settled that an error of mere omission in the court's charge must be corrected by the presentation of an appropriate special instruction. See Railway v. Gay, 86 Texas, 609. In that case, among other questions certified, was the following question: 'If a collusive and fraudulent receivership was shown, or rather, if that was the proper deduction from the undisputed evidence, was the court required to submit the issue to the jury before a judgment could be entered on a general verdict finding negligence?' In answer to which our Supreme Court said: 'These [referring to the questions stated and another] may be considered together. It has been held in a long line of decisions that

a charge correct so far as it applies to the facts, but omitting to state the law applicable to an issue raised by them, furnishes no ground for reversal unless proper instruction relating to the matter omitted be asked and refused,' citing a number of cases.

"The only special instructions on the subject requested which need be noticed are the following: First. 'If the plaintiff paid the brakeman of the freight train 15 cents to be carried from Transcontinental Junction to Texarkana, knowing that it was against the rules of the company for him to go on the said train, then plaintiff can not recover for any willful assault made upon him by the brakeman.' Second. 'If you believe that it was against the rules of the railroad company for the freight train on which Frank Black was riding to carry persons situated as Black was, and Black knew it, and if you further believe that Black paid the brakeman 15 cents to be allowed to ride to Texarkana, then the defendant would not be liable for any willful assault made by the brakeman on Frank Black.'

"We do not believe these instructions announce true principles of law. They would place the appellee and all others in like circumstances entirely beyond the protecting mantle of the law, regardless of whether the brakeman was acting in the master's interest or within the scope of his duties. We think it also apparent that these instructions entirely ignore, and in effect assume, the fact of the collusion and conspiracy to defraud participated in by appellee, which seems to be the distinguishing feature of the Minnesota and Mississippi cases cited, and in our opinion such charges were therefore properly refused. See Baker v. Ash, 88 Texas, 356; Willoughby v. Townsend, 18 Texas Civ. App., 724. In our judgment, it is not sound to say that the mere fact that purpose of the brakeman was one of self-protection will relieve his principal of all liability. If his act be within the scope of his duty and employment, as found by the jury in this case, and not in the furtherance of the conspiracy, his intent is immaterial. See Wood on Mast. and Serv., sec. 299; Cooley on Torts, 2 ed., p. 626, et seq.; Burnett v. Oechsner, 92 Texas, 588; Railway v. Cooper, 88 Texas, 607; Railway v. Lyons, 50 S. W. Rep., 161; Railway v. Yarbrough, 39 S. W. Rep., 1096; Railway v. Zantzinger, 92 Texas, 365.

"Nor, in our judgment, ought it to be held that the mere fact that the injured party paid a brakeman less than the whole fare, or with knowledge that in receiving it and in permitting his presence on the train, the brakeman was violating the rules of the company, entirely relieves the company of liability. This fact, of itself, it seems to us, but makes him a trespasser; and it is well settled that considerations of humanity imperatively demand that the railways of the country so conduct or cause to be conducted their business as not to unnecessarily and carelessly injure even the trespasser. See Wood on Mast. and Serv., sec. 277; Railway v. Grigsby, 13 Texas Civ. App., 639; Railway v. Belew, 22 Texas Civ. App., 264; Claiborne v. Railway, 23 Texas Civ. App., —.

"The law has no evenly balanced scales with which to measure or dis-

tinguish the degree of fault between the one who, without the payment of any fare, secretly and·silently takes passage, with intent to thereby defraud the railway company of the regular fare, and one who, with the same purpose, by paying a less sum, buys the consent and silence of the employe. They both alike are but trespassers. In the latter case we think it may well be held that if the trespasser be injured by his co-conspirator by some act or omission of negligence done in furtherance of the conspiracy, as, for instance, in assisting him on the train, or in secreting or placing him in an extra hazardous position, then, indeed, would the employe, and not the principal, be responsible; and to this extent, and so construed, are we willing to follow the Minnesota and Mississippi cases. Otherwise, whatever be the degree of fault in the trespasser, we think considerations of humanity and of public policy require that public railway and transportation companies shall exact of employes at least ordinary care in the discharge of their duties to avoid unnecessary injury, and that a failure to exercise such care under such circumstances, whereby injury results, renders the principal liable.

"In the case before us the jury have found that the act of the brakeman in ejecting appellee was not only within the apparent, but within the actual, scope of his employment and authority. The evidence is amply sufficient to sustain this finding. The history of this case shows that the injury complained of occurred in 1887; that the litigation has been long protracted, and we think no material error has been shown, and that the judgment should be affirmed."

The writer, however, feels constrained to express the following dissent from the conclusion so stated by the majority: That the issue of collusion was, in effect, tendered by the plaintiff, will appear from the following quotation from his petition: "Plaintiff avers that if he was on said train wrongfully, he did not know it; and if he was there in violation of any rule of the receiver or of the company, he did not know it; but that he was on said train with the consent of the servants of said receiver and of said company in charge of the same, and after having paid them his fare from said Transcontinental Junction to said Texarkana, and that he was on said train in good faith, believing that he had a right to ride thereon."

Under the general denial, therefore, it was competent to show that appellee knew that he was wrongfully on the train, in violation of the rules of the company, with the consent, admittedly, of its servants, whom he had paid to do what it was competent under the issue so made for appellant to show was a known violation of their duty. That he was put off by the same servants whom he had paid for the ride was the clear purport of the petition. It is a familiar rule of pleading that defensive matter which must ordinarily be specially alleged in the answer may be put in issue by the plaintiff's petition, so as to make it available to the defendant under the general denial.

In Boynton v. Tidwell, 19 Texas, 119, which was an action for false

imprisonment, it was held that proof of justification under warrant was admissible, although the plea attempting to set up that defense was bad, because the petition "distinctly alleged," to quote from Judge Wheeler, "that there was no affidavit or warrant under which the defendants acted, and thus tendered that issue, and the defendants were at liberty to introduce evidence to disprove the plaintiff's averments."

The following cases are authority for the proposition that the defendant may avail himself of facts admitted in the plaintiff's petition, without pleading them himself: Hill v. Allison, 51 Texas, 390; Bourke v. Vanderlip, 22 Texas, 222; Ogden v. Ross, 86 Texas, 344, and cases there cited.

Even in the Shieder case, 88 Texas, 152, in which it was finally and distinctly decided that the burden of proof rests upon the defendant to establish the defense of contributory negligence, this language was used: "To the general rule imposing upon the defendant the burden of proof on the issue of contributory negligence there appear to be, in the very nature of things, two well defined exceptions: First. Where the legal effect of the facts stated in the petition is such as to establish prima facie negligence on the part of the plaintiff as a matter of law, then he must plead and prove such other facts as will rebut such legal presumption. The plain reason is that by pleading facts which, as a matter of law, establish his contributory negligence, he has made a prima facie defense to his cause of action which will be accepted as true against him, both on demurrer and as evidence on the trial, unless he pleads and proves such other facts and circumstances that the court can not, as a matter of law, hold him guilty of contributory negligence. When he has done this, he has made a case which must be submitted to the jury. For instance, if plaintiff's petition shows that he was injured by defendant's cars while on the track, under circumstances which in law would make him a trespasser prima facie, then the law would raise a presumption of contributory negligence against him, for which his petition would be bad on demurrer; and it would be necessary for him to plead some fact or circumstance rebutting such presumption,—such as that he was, after going upon the track, stricken down by some providential cause,—in order to save his petition, and on the trial the burden would be upon him to establish such cause. Railway v. Murphy, 46 Texas, 360; Railway v. Sympkins, 54 Texas, 618."

Applying the principles of these cases to the one at bar, there is little room to doubt, the writer thinks, that the vital issue under consideration, though defensive in character, was tendered by the petition and joined by the general denial of the answer. It seems equally clear that the issue was raised by the testimony. Notwithstanding appellee's positive denial of any knowledge on his part that it was against the rules of the company to carry passengers on freight trains, the circumstances in evidence undoubtedly tended to a contrary conclusion, and if the evidence did not require the finding, it certainly admitted of the inference that he was ejected by the brakeman in order to conceal the latter's violation of duty,

though the act itself of thus clearing the train of trespassers was ostensibly in discharge of his duty. See the opinion of the Supreme Court in the companion case, Railway v. Black, 87 Texas, 160.

That the issue so raised both by the pleadings and testimony was entirely ignored by the court on the trial of the case seems quite obvious, not only from the refusal of the several special instructions requested by appellant's counsel, but also from what was given in the main charge, particularly in the second paragraph, to all of which error is assigned. True, the special charges requested by appellant were not as full as they might have been, but the controverted issue of fact on this phase of the case was, whether or not appellee knew that it was against the rules of the company for freight trains to carry passengers, and that issue would have been submitted if these charges had been given. It was admitted by him that he paid the brakeman to allow him to ride, and that the brakeman whom he thus hired to violate his duty knocked him off. It would have been improper to submit to the jury as doubtful, facts so admitted. If appellee boarded a freight train, knowing he had no right to ride on it, and paid the brakeman to violate his duty to his master, it is difficult to see how he could have been otherwise than in collusion with the brakeman, whether he made any profit out of the transaction himself or not.

But if the special charges were not sufficiently comprehensive, or for any other reason should not have been given, the general charge, in effect, excluded the defense of collusion between appellee and the brakeman from the consideration of the jury, in that, stripped of superfluous clauses, the second and main paragraph instructed them, in substance, to find for appellee if, while riding on appellant's train, he was knocked off with undue force by its brakeman in the attempt to eject him, provided "said brakeman had authority from his employers to eject trespassers from said train." The charge given, therefore, misdirected the jury as to the law of this case, for appellee, under the facts alleged in his petition and admitted on the trial, was not entitled to recover if his allegation of good faith was disproved. That issue belonged to the jury, and neither the District Court nor this court has the right to take it away.

It is therefore the opinion of the writer that the judgment should be reversed and the cause remanded for a new trial upon the real issue involved, irrespective of the length of time the case has been in court. But since the majority entertain a different opinion, as above indicated, the judgment is affirmed.

*Affirmed.*

Writ of error refused.