The questions in this case are presented by the following certificate from the Court of Civil Appeals of the First District:
"William Grahn sued the International Great Northern Railroad Company to recover damages for personal injuries. Defendant pleaded general demurrer and general denial and specially such collusion and wrongdoing between plaintiff and the conductor as relieved the defendant from liability, which was specially denied by plaintiff in supplemental petition.
"Upon the trial, upon motion of defendant for peremptory instruction, the court instructed the jury that the evidence showed a collusive arrangement between plaintiff and the conductor, and that the defendant *Page 29 
was not liable. From a judgment for defendant, upon this instruction, plaintiff appeals.
"The facts in evidence are as follows: Plaintiff, a boy 19 years of age, with another boy a little younger, desiring to go from Galveston to Houston, went to the railroad yards in Galveston between eight and nine o'clock at night with the intention of going on a freight train, if they could get the consent of the conductor. At the yards they found a freight train ready to leave for Houston. Finding the conductor they asked him if they could go to Houston and he asked them if they had any money and the boys told him they had fifty cents apiece. They paid the conductor the money and he took them to a freight car and put them in and shut the door. This was about nine o'clock at night. About one o'clock a.m., while going into Houston, the conductor came into the car and ordered the boys to leave the train. They objected for the reason that the train was running too fast. The conductor, however, shoved plaintiff off and in doing so plaintiff fell in such a way that the cars ran over one of his legs, in consequence of which it had to be amputated.
"Plaintiff had been raised in Galveston and was familiar with city ways. Had been to school. Had been working at the plumber's trade earning $3.50 a day, and was going to Houston to look for a job. Plaintiff testified that if he could not have gotten the consent of the conductor to ride on the freight train he would have waited until next morning and gone on a passenger train; that he did not know what the rules of the road were, and that he thought he had a right to ride on the freight train if he paid the conductor what he asked; that he wanted to go as cheaply as he could, and would have preferred to go on a passenger train if he could have gone for the same money. When the conductor told plaintiff to leave the train plaintiff made no objection, except that it was too dark or the train was running too fast. Said nothing to the conductor about having paid his fare.
"Upon these facts the following questions arise which are respectfully certified:
"1. Upon the facts stated, could the trial court properly assume, as matter of law, that appellant knew, or must be presumed to have known, that the conductor had no authority to allow him to ride on the freight train as a passenger?
"2. If it be either assumed as matter of law, or found as matter of fact from the evidence, that plaintiff knew, or must be presumed to have known, that the conductor did not have such authority, would such collusion between the plaintiff and the conductor bar a recovery by plaintiff?"
I. While the plaintiff says that "he did not know what the rules of the road were, and that he thought he had a right to ride on the freight train," he adds that "he wanted to go as cheaply as he could, and would have preferred to go on a passenger train if he could have gone for the same money," which shows that he knew he was inducing the conductor to do that which the latter had no right to do; for it is too plain to admit of dispute that he had no right to wrong his employer by carrying *Page 30 
passengers on freight trains for less than the regular fare. (Condran v. Chicago M. St. P. Ry., 67 Fed. Rep., 522; 3 Thompson Neg., sec. 3323.) The first statement of the witness might admit of much mental reservation and mean anyone of several things, but there can be no doubt that the last means that plaintiff intended to get a cheap passage by prevailing upon the conductor to forget his loyalty to his employer. Plaintiff's whole statement as to the conversation with the conductor, the place where he was put and the manner in which he was carried and treated shows that he was not contracting for, nor expecting, the treatment due from a railroad company to a passenger, but that he dealt with the conductor alone for favors which he had the power but not the right to grant. This being true, it is immaterial whether or not plaintiff knew, specifically, that the rules of the defendant forbade the carriage of passengers on freight trains. He did not suppose himself to be, and does not seek to recover upon the theory that he was, a passenger. His claim is that although he was a trespasser and liable to ejection, a wrong was committed by defendant's servant in the manner of his expulsion. He would be entitled to recover on that theory if the acts of the conductor in ejecting him could be imputed to defendant; and such acts would undoubtedly be so imputed, but for the effect of the collusion between himself and the conductor; and this raises the second question put by the Court of Civil Appeals.
II. To the second question the reasoning of the Supreme Court of Minnesota, in the case of Brevig v. Chicago, St. P.M. O. Ry., 64 Minn. 173, is applicable. In that case the plaintiff paid a brakeman to permit him to travel in a box car in the train with which the brakeman was connected and was afterwards required by some employe to jump off while the train was in motion and sustained injuries. The evidence conflicted as to whether the employe who expelled the plaintiff was the brakeman who had admitted him to the train. That court holds that brakemen generally have implied authority to eject trespassers from trains on which they are employed, differing with this court on that point; and what is said in the case referred to as to the responsibility of the railroad company for the acts of the brakeman is equally applicable in this state to those of conductors who admittedly have authority ordinarily to expel trespassers from their trains. Says the court: "But we are also of the opinion that the brakeman who conspired with plaintiff to commit a trespass against defendant, had no implied authority, subsequently, to represent defendant in ejecting plaintiff, and that, if he was the brakeman who did eject plaintiff, it was simply the assault of one joint trespasser upon the other, for which the defendant is not liable. This is true whether the conductor had locked the plaintiff up or not. By plaintiff's own procurement, the brakeman had ceased to be the disinterested servant of the defendant, or, as far as that transaction was concerned, its servant at all. His motive in driving plaintiff off the train while in motion might have been, not to serve his master, but to cover up his offense against his master. If there is any doubt as to that, the doubt must be resolved against the wrongdoer. Plaintiff and the brakeman became joint trespassers at the beginning of the transaction, and it must be presumed that they continued such to the end. The brakeman's *Page 31 
implied authority to represent the defendant in ejecting his confederate had ceased, and if he was subsequently given express authority to eject him, the burden was on plaintiff to prove it. Then, if the same brakeman whom he bribed to let him into the car drove him out of it, he is not entitled to recover." The same view has been expressed by the Supreme Court of Mississippi: Yazoo, M. V.R. Co. v. Anderson, 25 So. 865; Williams v. Mobile O.R.R. Co., 19 So. 90; Illinois Central R. Co. v. Latham,72 Miss. 33; Alabama Vicksburg R. Co. v. McAfee, 71 Miss. 70.
This is in accord with the principle of the law of agency which exacts the most perfect fidelity on the part of the agent to his principal and denies the responsibility of the principal for the conduct of the agent whenever the latter acts in collusion with a third person in order to promote his own interest or that of him with whom he is dealing rather than that of the principal. The general principle which holds the master or principal responsible for the acts of the servant or agent has no just application in such cases. The person who, for his own benefit, induces the servant to engage in a transaction which he knows to be a violation of duty to and a sacrifice of the interests of the master, is in no position to insist that the master is responsible to him for the consequences of the servant's infidelity to him. The conductor, in the present case, could not bind his employer to his engagement with the plaintiff, for want of authority. The undertaking was his own and not that of defendant. In executing it by transporting plaintiff, and in determining the time at which and the manner in which plaintiff should depart from the train, he acted for himself alone, and is alone responsible to plaintiff. While the defendant would ordinarily be responsible for the manner in which such an employe exercises his authority in freeing his train from trespassers, that principle can not apply here, because of the combination by which plaintiff induced the conductor to serve him instead of the defendant.
This subject was considered by the Court of Civil Appeals for the Second District, in the case of Texas Pacific Railway Company v. Black, 23 Texas Civ. App. 119[23 Tex. Civ. App. 119], 57 S.W. 330, and views were expressed by the majority differing to some extent from that taken by the Minnesota and Mississippi cases to which we have referred. A writ of error was applied for and denied by this court from the judgment of affirmance in the Black case, but, as will appear from the opinion of the Court of Civil Appeals, that action did not necessarily involve a decision of the questions now before us. We are not prepared to say that the principle which we have discussed would apply to the case of such a child as Black was. Denison Sherman Ry. Co. v. Carter, 98 Tex. 196. While plaintiff appears to have been a minor, the facts stated suggest no doubt of the sufficiency of his experience and intelligence to justify the application of the doctrine which we have announced.
We therefore reply that the evidence justified the trial court in assuming that there was such collusion between the plaintiff and the conductor as to bar a recovery, which, in substance, answers both of the questions stated in the certificate. *Page 32