CHICAGO, ROCK ISLAND & GULF RAILWAY COMPANY v. JOHN SWANN.

Decided April 21, 1910.

**1.—Misconduct of Jury—New Trial.**

No abuse of discretion by trial court appears in its refusal of a new trial for alleged misconduct of the jury in determining by lot the amount of damages awarded, the evidence supporting a conclusion that it was not so reached.

**2.—Damages—Personal Injuries.**

A verdict for $13,000 damages for personal injuries to a woman in wreck of the train on which she was a passenger by collision, held unwarranted in amount by the evidence which is here considered, but not so

excessive as to require reversal in the absence of matters which might have improperly influenced such. finding; but argument of plaintiff's counsel is held to suggest such improper influence affecting the amount of recovery.

### 3.—Same—Argument of Counsel.

Argument of plaintiff's counsel in his closing speech, urging a large verdict because of the wealth of defendant and poverty of plaintiff, held improper because not based on evidence and not a matter to be considered in fixing damages for a personal injury; the trial court having declined to interfere when objection was made, such argument, followed by a verdict unwarranted by the evidence, is held ground for reversal.

### 4.—Damages—Practice on Appeal—Reduction of Judgment.

Reversing a recovery of damages in the sum of $13,000 for personal injuries, the appellate court permit judgment to stand on remittitur by plaintiff of $5,000.

Appeal from the District Court of Tarrant County.    Tried below before Hon. Mike E. Smith.

*N. H. Lassiter* and *Robert Harrison,* for appellant.—The argument of counsel was improper.    Ft. Worth Belt Ry. Co. v. Johnson, 125 S. W., 338; Railway Co. v. Beezley, 101 S. W., 1052; Railway Co. v. Washington, 92 S. W., 1059; Railway Co. v. Black, 89 S. W., 807; Railway Co. v. McCarty, 89 S. W., 807; Railway Co. v. Jones, 39 Texas Civ. App., 480; Railway Co. v. Musick, 76 S. W., 22; Dillingham v. Scales, 74 S. W., 566; Railway Co. v. Langston, 48 S. W., 613; Railway Co. v. Sokol, 32 S. W., 489; Bitterman v. Heath, 32 S. W., 341; Railway Co. v. Younger, 29 S. W., 950; Railway Co. v. McLendon, 26 S. W., 317; Mill Co. v. Hobbs, 23 S. W., 924; Railway Co. v. Withers, 22 S. W., 958; Fordyce v. Withers, 20 S. W., 768.

*Capps, Cantey, Hanger & Short,* for appellee.—The argument of plaintiff's counsel was justified by that of defendant. Gulf, C. & S. F. Ry. Co. v. Scott, 26 S. W., 995; Missouri P. Ry. Co. v. White, 15 S. W., 808; International & G. N. Ry. Co. v. Goswick, 83 S. W., 423.

The amount of recovery was supported by the evidence.    International & G. N. Ry. Co. v. Miller, 124 S. W., 109; Galveston, H. & S. A. Ry. Co. v. Stevens, 94 S. W., 395; Missouri P. Ry. Co. v. Lehmberg, 75 Texas, 67.

WILLSON, Chief Justice.—This appeal is from a judgment against appellant and in favor of appellee for the sum of $13,000 as damages for personal injuries suffered by his wife as the result of a collision between two of appellant's trains, on one of which she was riding as a passenger.    That the collision was due to negligence on the part of an employe of appellant was admitted.    The issue was as to the amount of damages appellee was entitled to recover.

We can not say that the trial court abused the discretion the law conferred upon him (Rev. Stats., art. 1371, as amended, General Laws 1905, p. 21), when he refused to grant appellant a new trial

on the ground that the jury had been guilty of misconduct in that they had reached their verdict by lot. The testimony offered by the parties on the question made by the motion was sufficient to support the court's finding that the verdict was not so reached. The assignment complaining of the action of the court in the particular stated therefore is overruled.

Appellant insists that the trial court erred in refusing to grant it a new trial on the ground set up in its motion that the verdict of the jury was excessive.

At the time she suffered the injury complained of Mrs. Swann was about thirty-seven years of age, and, notwithstanding she was the mother of eight children and had suffered one miscarriage, was enjoying and had always enjoyed good health, and had always been able to do and had done the cooking, sewing, washing, ironing, etc., for the family, consisting of herself, her husband and their children. As a result of the collision of the train she was riding upon with another train, the shin of her right leg was scratched and bruised, her hip was bruised, and she received a blow on the back of her head severe enough to produce a knot thereupon. She did not then realize that she had suffered other injuries, but on the next day found it necessary to take to her bed, where she remained several days under treatment of a physician, called in on the third day after she received the injuries. Off and on from that time until the date of the trial, which occurred about twenty-six months later, she had been confined to her bed for periods ranging from a day or two to two weeks at a time, and had suffered from pains in her leg, back and head. Her monthly periods became irregular and painful, an ovary and her womb had become displaced, she occasionally suffered from a little fever, her pulse at times ran from 132 to 140, when it should not have exceeded 75 to 80, she was troubled with insomnia, she suffered from a twitching or jerking of the muscles of the face, and she lost fifteen or twenty pounds in weight. Two physicians testifying for appellee each stated that the condition of Mrs. Swann's health after she suffered the injuries was due to traumatic neurosis—which one of them defined to be an injury causing a functional disturbance of a nerve or nerves, and which, he said, as a rule, "gradually grows worse and in a majority of cases the result is paralysis." The same physician testified that only about fifty percent of the number of persons suffering from traumatic neurosis recovered, and that in view of the fact that Mrs. Swann had suffered with it for two years he did not think she would recover. The physician referred to seems to have been the one in charge of the case during the time intervening between the accident and the trial. The other of the two physicians referred to, on three different occasions, had been called into a consultation with the one in charge of the case, and testified that some patients suffering from traumatic neurosis "get gradually worse and worse until finally they become paralyzed and die—the tendency is that way." On cross-examination he testified: "I did not say I never knew a case of traumatic neurosis to be cured; some of them probably get well after years—some of them do get well. I have seen some very miraculous recoveries from that trouble after a

judgment rendered against a railroad." The bills of the physicians who treated Mrs. Swann aggregated about $160.

The foregoing is as favorable a statement of the evidence relied upon to support the verdict as fairly can be made from the record. We do not think it warranted a verdict for as great a sum as that found by the jury. Chicago, R. I. & T. Ry. Co. v. Jones, 39 Texas Civ. App., 480, 88 S. W., 446. Still, if there was nothing in the record which could be referred to as having probably improperly influenced the jury, we would not set aside the judgment; for in a case like this one is, in the absence of anything indicating that the jury may have been influenced by other matters than the evidence in determining the amount of their verdict, we would not think we were justified in setting their finding aside merely because we would have found a smaller amount. But we can not say that the verdict rendered is not for a greater amount than it would have been for had counsel for appellee in closing the argument not indulged in the remarks objected to by appellant at the time, set out in a bill of exceptions allowed by the court as follows: "What amount of money will you give the plaintiff in this case? What amount do you think would compensate your wife for a lifetime of pain and suffering? We ask here for $15,000, but the facts in this case would sustain a verdict anywhere from $15,000 to $25,000, and $15,000 is not too much to compensate this woman for the injuries she has undergone. If we had sued Goodman, the conductor, and he had been worth $10,000, you would not have given a verdict against him for $10,000, or probably $5,000, because such a verdict would practically bankrupt him, but in this case against this railway company a verdict for that amount is a little one. The amount we ask for here is a little thing to the railroad company, and a big thing to my client. You needn't be afraid of giving too much money for fear the railroad company will appeal the case if it is a good, big verdict. I had rather have no verdict at all than some little verdict for $5,000, $6,000 or $7,000, because it would not properly compensate her for her injuries." Several portions of that argument were, we think, improper. For instance, there was no evidence showing that the amount appellee sought a recovery for was "a little thing" to appellant and "a big thing" to appellee. The statement in effect was a comparison of the financial condition of appellee with that of appellant, in the absence of any other evidence showing the financial condition of either of them than that furnished by the assertion of counsel in the argument. The only issue submitted to the jury was as to the amount appellee was entitled to recover as damages. The financial condition of the parties was not a matter the jury properly could consider in determining that issue. We are not able to say they did not consider it. On the contrary, in view of the fact that the court refused to rule on appellant's objection interposed to said portion of counsel's argument, thereby in effect approving it as proper, we think we should assume that the jury did consider it, and that their verdict was for so great a sum because they did consider it. Therefore we think it is our duty to reverse the judgment as excessive. As, on the record before us, we do not think the judg-

ment should be reversed on any other ground, it becomes our further duty to indicate the amount of the excess entering into it, as it appears to our minds. Sayles' Stats., art. 1029a. This we now do, placing the excess at the sum of $5,000.

The judgment of the court below will be reversed and the cause will be remanded for a new trial, unless the appellee within twenty days from the date of the judgment of this court herein shall remit of the amount of the judgment obtained in the court below the sum of $5,000, in which event the judgment of said court will be reformed and affirmed for the sum of $8,000.

*Affirmed on filing remittitur.*

Writ of error refused.