BEASLEY v. FAUST. (No. 6296.)

(Court of Civil Appeals of Texas. San Antonio. Dec. 17, 1919.)

1. EVIDENCE ☞537, 548 — MEDICAL EXPERT QUALIFIED ON QUESTION OF INSANITY.

Medical witness, not a specialist on mental diseases, but who had treated many insane persons and had read text-books on insanity, *held* competent to testify as an expert that defendant, sued on a note and for foreclosure of the deed of trust securing it, was insane at a time when he had not observed him, when the instruments in question were executed; his opportunities for observing and conversing with the defendant before and after such time having justified him in forming the opinion of insanity expressed.

2. EVIDENCE ☞505—EXPERT TESTIMONY NOT STATEMENT OF LEGAL CONCLUSION.

Testimony of a medical expert on insanity that defendant from about 1912 to the date of trial would not have been conscious of the effect of his acts on himself or surrounding circumstances was not subject to the objection that the witness was stating a legal conclusion rather than a point of fact.

3. TRIAL ☞83(1)—TESTIMONY IMPERVIOUS TO OBJECTION URGED ADMISSIBLE.

Where testimony complained of was not subject to the objection urged, the trial court did not err in admitting it even if subject to some objection not urged.

4. APPEAL AND ERROR ☞714(4)—STATEMENT OF COURT NOT IN RECORD CANNOT BE NOTICED.

Where there is nothing in the record to show that court made a statement because of which a finding was asked, appellate court will not accept the motion for a finding or the motion for new trial asserting such fact as the fact.

5. BILLS AND NOTES ☞516—EVIDENCE SHOWING INSANITY OF MAKER.

In suit on a note and for foreclosure of the lien of a deed of trust securing it, evidence *held* to show that defendant since 1912 had been of unsound mind without a lucid interval in which the contract in suit was made.

6. BILLS AND NOTES ☞494—BURDEN TO SHOW LUCID INTERVAL OF INSANE MAKER.

Plaintiff suing an insane person on a note had the burden to show that the contract was entered into by him during a lucid interval.

**7. BILLS AND NOTES ⬅═516—EVIDENCE NOT SHOWING RATIFICATION DURING LUCID INTERVAL.**

In suit on a note and for foreclosure of the lien of a deed of trust securing it, evidence *held* insufficient to show that the insane defendant, by checking out from his bank during any lucid interval the proceeds of the transaction, ratified the contract.

Appeal from District Court, Wilson County; Covey V. Thomas, Judge.

Suit by Mrs. Felix Beasley against J. M. Faust. From judgment for defendant, plaintiff appeals. Affirmed.

Wiseman & Burney, of Floresville, for appellant.

J. E. Canfield and O. A. McCracken, both of Floresville, for appellee.

MOURSUND, J. Mrs. Felix Beasley sued J. M. Faust upon a note for $319.20 and for foreclosure of a deed of trust lien upon 50½ acres of land. .

James A. King, an attorney at law, filed an application asking the court to appoint a guardian ad litem for defendant, alleging that defendant was a person of unsound mind. The court appointed Mr. King guardian ad litem, and he answered, but, having removed from Wilson county prior to the trial, the court appointed J. E. Canfield and O. A. McCracken, practicing attorneys, as guardians ad litem. The answer consisted of a general denial and a plea of insanity, and, by way of cross action, asked for the cancellation of the note and mortgage, alleging that the mortgage cast a cloud on defendant's title. By supplemental petition plaintiff denied that defendant was insane at the time he executed the note and mortgage, and alleged that at such time he was a person of sound mind and was transacting his own business; that the proceeds of said note, after deducting the expenses of making the loan, were deposited in the City National Bank of Floresville to defendant's credit; that at various times defendant gave checks on said account and checked out said money, and by so doing ratified the contract whereby he gave the note and mortgage. Plaintiff further alleged that the money was used for necessaries and for the use and benefit of defendant's estate.

The trial, without a jury, resulted in a judgment canceling the note sued upon and the mortgage in so far as it secured the payment of said note.

[1] Dr. J. B. Treon testified that he thought the defendant had been insane all the time from the fall of the Wilson campaign to the time of the trial. This testimony was objected to on the ground that the witness did not qualify as an expert, and because the witness was testifying to his opinion concerning the mental condition of the defendant at a time when he had not observed him. Dr. Treon had practiced medicine for 55 years, and had ample opportunity to observe defendant during the years concerning which he testified, but was unable to state that he had observed him at the time of the execution of the note and mortgage. He had not specialized in the treatment of mental diseases, but had treated a good many persons who were insane. He had read textbooks on insanity, and his opinion whether insanity was curable was based on observation and text-books. He modestly admitted that he did not know what kind of insanity defendant had, and this admission is considered by appellant to be sufficient to deprive him of standing as a skilled witness. The specialist in diseases of the mind may be able to classify with reasonable accuracy all cases of insanity which come under his observation, but it is not necessary that the physician should be a specialist in order to testify as a skilled witness. As we understand the authorities, Dr. Treon fully qualified as a skilled witness who was entitled to give his opinion of the mental condition of defendant, not only at such times as he observed him, but also at the time he executed the instrument in question; his opportunities for observing and conversing with defendant before and after such time being such as to justify him in forming the opinion expressed. See, on this point, Chamberlayne on Evidence, §§ 2008, 2010, 2011, and 2023; Lawson on Expert and Opinion Evidence (2d Ed.) pp. 136, 143. The first assignment is overruled.

[2, 3] By the second assignment of error complaint is made because the court permitted Dr. Treon to testify that defendant from about 1912 to the date of the trial would not be conscious of the effect his acts would have on him or surrounding circumstances. In addition to the objections to the qualifications of the witness above considered, the further objection was urged that this testimony "was a legal conclusion of the witness." The testimony is not subject to the objection that the witness was stating a legal conclusion. No knowledge of any rule of law was necessary in order to answer the question. The answer involved only an opinion concerning the extent or degree of the mental unsoundness of defendant. The expression of an opinion that a person did not have sufficient capacity to make a will or deed or to transact business has been held improper by our courts in cases of Brown v. Mitchell, 88 Tex. 367, 31 S. W. 621, 36 L. R. A. 64, and Williams v. Livingstone, 52 Tex. Civ. App. 275, 113 S. W. 786. These holdings are in accordance with the weight of authority. Mr. Wigmore, in his work on Evidence (section 1958), and in the supplement to the second edition published in 1915, discusses many cases on this subject,

---

⬅═For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

and finds the decisions to be unsatisfactory in many instances. To make a valid will or contract a certain amount of mental capacity is required by the rule of law to be applied in testing the validity of the transaction, and for a witness to say that a person has the requisite capacity implies that such witness knows the rule of law and is applying it in arriving at his conclusion. It seems obvious that to state that a person "would not be conscious of the effect his act would have on him" does not imply that the witness has attempted to apply a legal definition to test the validity of any act of the person. It is, of course, possible to have a witness state his opinion concerning the ultimate fact issue to be found by the jury, so that, if the jury found such opinion to be correct, and applied the law to such fact, the entire case would be settled. It might have been contended that the opinion expressed by Dr. Treon is in effect an opinion that on the date of the execution of the note and deed of trust defendant was not conscious of the effect his acts would have on him, and that therefore necessarily he expressed the opinion that defendant was not conscious of the effect the execution of the note and deed of trust would have on him. Looking at the matter from this standpoint, the objection might have been urged that the opinion was one upon the ultimate fact to be determined by the jury. However, as we understand our decisions, that objection is not tenable if the opinion relates to a matter within the scope of expert testimony. Scalf v. Collin County, 80 Tex. 514, 16 S. W. 314; H. & T. C. v. Roberts, 101 Tex. 418, 108 S. W. 808; G., H. & S. A. Ry. v. Stoy, 44 Tex. Civ. App. 448, 99 S. W. 135. In this case, however, the only objection relating to the competency of the evidence was that the opinion involved a legal conclusion. Such objection was properly overruled. The court had previously admitted, over objections going only to the qualification of the witness, an opinion that defendant was not responsible for his actions at any time from 1912 to the date of the trial. Counsel then asked that such statement be excluded because the answer involved a legal conclusion. The court promptly granted such request. This shows that the court was carefully testing the admissibility of the testimony by applying the objections urged. As the testimony complained of was not subject to the objection urged, the court did not err in admitting the same, even if it had been subject to some objection not urged.

The court's findings of fact, in so far as material, briefly summarized, are: That defendant executed the note and mortgage as alleged; that defendant became of unsound mind in December, 1914, and had continuously been of unsound mind to the time of the trial; that at no time during said period had he ever been of sufficient mental capacity to

understand and realize the probable effects and consequences of his acts, and also found specifically that he did not have such capacity at the time he executed the note and mortgage; that plaintiff's agent at the time of making the loan knew and had notice of the fact that defendant had insufficient mental capacity to make a binding contract; that no part of the money was expended for necessaries or for the benefit of defendant's estate; that defendant never ratified his act of executing said note and mortgage.

[4] A motion was made requesting the court to find whether defendant was conscious of his act in signing the note and mortgage and morally bound. Of course, the real inquiry is whether defendant is legally bound, and that must be determined from the facts found. A conclusion that he was morally bound could not be permitted to change the facts found. It is contended that the court stated at the time of his decision that defendant had lucid intervals, during which he did things he would be conscious of and for which he would be morally bound, but not legally. This statement was embraced in the motion for additional findings and the motion for new trial. Both were overruled, and it cannot be assumed that the court assented to the correctness of any statements therein contained, nor is it shown by a bill of exceptions that such occurrence took place. It is apparent that, as we cannot determine from the record whether the court made such a statement, we are not called upon to decide the issue whether the court erred in refusing to make an additional finding.

[5] The findings of fact, in so far as they relate to mental capacity to execute or ratify the note and mortgage, are challenged. The assignments relating to the findings will be considered together.

In addition to the testimony of Dr. Treon, already considered, that witness testified without objection that he thought at times defendant would be conscious of his acts—that is, of what he was doing—but possibly he might not be conscious of the result of those acts; that the witness did not think defendant "had any realization of the responsibility or effect of what he was doing." It appears from Dr. Treon's testimony that he was very intimate with defendant's father up to the time the latter moved to San Antonio from Floresville. When defendant returned to Floresville, after being released from the asylum on parole, Dr. Treon resided at Poth, but was in Floresville every two weeks, and saw defendant upon these occasions. He moved to Floresville about the middle of February, 1917. He was at Floresville before he moved there and met defendant, and after moving he saw defendant frequently and observed him. In conversations with him he noticed that defendant's mind was wandering, and he could not for any length

of time discuss a subject intelligently. He talked to defendant when defendant was sick, and went out to see him once after that, and had several additional conversations with him.

In addition to the testimony of Dr. Treon to the effect that defendant was afflicted with insanity, believed by such witness to be incurable, the defendant introduced the testimony of Dr. Oxford, who testified that defendant was afflicted with depressive or circular insanity, and had been since he first examined him in 1915. He testified further that it was his opinion that it was incurable, but he thought the defendant had had lucid intervals in the years intervening between the time when he first examined him and the date of the trial. He stated that in all cases of circular insanity there were intervals in which the persons would be conscious of their acts and should be held responsible for them; that "as the cycle moves on it might come down to the level period, or it might just go by that level mark so fast it would not be observed"; that, if the person gets in the normal plane and stays there for any length of time, he should be held responsible morally, if not legally, for his acts. · This witness saw and, treated defendant for illness in the spring of 1917, and again for a broken arm about two months later. He testified that on these occasions he noticed from defendant's language that he was mentally unbalanced; that on the first occasion, in 1917, when he treated defendant, the latter's judgment and reasoning were faulty; that he had seen defendant when he was conscious of his acts, but should not be held responsible for the same; that this statement related to the last time he saw defendant.

In addition, there was the testimony of members of defendant's family and others to the effect that defendant had been of unsound mind continuously for about five years.

The appellant introduced the testimony of various persons who had talked to defendant and did not notice anything wrong with his mind. The only testimony introduced by appellant bearing directly on defendant's mental capacity at the time he executed the instruments in question was that of R. A. Wiseman, who took the acknowledgment to the mortgage. The witness did not notice anything wrong with defendant's mind. It took him about two minutes to write the certificate and take the acknowledgment. He did not testify that he had any conversation with defendant, and presumably did no more than ask him the necessary question concerning the execution of the instrument. This witness had also had a conversation with defendant the following fall, and at that time noticed nothing wrong. It may be urged that the testimony of counsel for appellant has some bearing upon this point, because it discloses that after the suit was filed appellee,

in a conversation concerning the suit, described the notes secured by the deed of trust, and stated that he borrowed the money and gave checks for it. This does not necessarily mean that defendant recollected the transaction, for he may have derived his knowledge from the citation and information given him by relatives. This testimony tends to show that at the time of such conversation defendant's mind was in good condition, but no ratification is predicated upon anything transpiring at that time. The fact that he was able at that time to discuss the matter intelligently was only a circumstance to be considered in connection with the other evidence in determining his mental condition at a time more than a year prior to such conversations.

The agent and attorney who made the loan did so after his attention had been called to the fact that defendant had been in the asylum, and appellant seems to attach some importance to the fact that one of the counsel for appellee testified to his opinion that said agent would not have made the loan unless he thought defendant's mind was sound. The opinion of one person concerning the existence of an opinion on the part of another person can have no probative force. In addition, the opinion of the agent, if proven, would be of little, if any, value, for it was not that of a physician, and the facts upon which it was based are not shown.

[6] The evidence, taken as a whole, is convincing that defendant, ever since 1912, has been of unsound mind. The testimony of both physicians is that he cannot be cured. Mrs. Bush was permitted to testify, without objection, that the doctors at the asylum met and pronounced defendant incurable. The medical evidence is not so satisfactory upon the point whether defendant ever had intervals when he was sufficiently sound mentally to understand the nature of business transactions and appreciate the effect thereof. Taking Dr. Treon's opinion as correct, the court could find that defendant, while sometimes in better condition than at others, was never sufficiently sound mentally to appreciate the effect of a contract involving notes and a deed of trust. If the court preferred Dr. Oxford's opinion, he would be justified in finding that there was a probability, at least, of the opposite conclusion being true. The court, as shown by his findings, decided that Dr. Treon's opinion was correct. It cannot be said that the evidence does not justify the affirmative finding that there was no lucid interval at the time the contract was signed. However, as we understand the law, in view of the settled condition of defendant's malady, as shown by the evidence, the burden was on appellant of showing that the contract was entered into during a lucid interval. Elliott on Contracts, § 366. The most important evidence relied on by appellant to

show such an interval has been stated. In addition appellant seeks to draw an inference from what he considers to be an absence of testimony on the part of appellee's sister, Mrs. Bush, and her husband, concerning facts showing unsoundness of appellee's mind on the day after the contract was made, upon the occasion when Bush and defendant went to San Antonio and joined Mrs. Bush at the home of the father of appellee and Mrs. Bush, who had died on that day. We do not look upon the testimony of Mr. and Mrs. Bush as furnishing any support for appellant's contention. Bush testified that when he told defendant of his father's death it did not seem to affect him at all. Defendant's father died at San Antonio, and Bush and defendant went to that city. Mrs. Bush was at San Antonio. She stated that defendant did not seem to know or care why he was brought up there, and that his actions that night were such that she could not leave him alone; that he did not sleep, and the next morning they could not leave him alone; in fact, that they felt called upon to explain to the neighbors his condition. She also testified that when they went to the depot defendant saw the body of his father, and just turned and left and Mr. Martin had to hunt him; that they arranged for Mr. Martin to take defendant to Floresville in an automobile because they never knew what he might do and were afraid to take him with them. While the witnesses failed to detail conversations they had with defendant, their testimony shows plainly that, if he had any lucid interval, they failed to detect such condition.

If Dr. Treon's opinion be discarded, and Dr. Oxford's adopted, nevertheless the court would have been justified in finding that appellant failed to show the existence of a lucid interval at the time the contract was made.

[7] Appellant pleaded that defendant during the months of March, April, May, and June, 1917, by means of checks, drew out of the bank the funds obtained from appellant, and thereby received benefits under the contract, and that this occurred at times when he realized the nature of the obligations executed by him, and by such acts ratified the contract. During the spring and summer of 1917 both of the medical witnesses had occasion to observe defendant. They did not detect any lucid interval upon those occasions. No person to whom he gave a check testified.

Mr. Wiseman, the vice president of the bank, testified that to the best of his recollection defendant cashed some checks himself; that he did not see anything wrong with defendant's mind at these times. This negative testimony would not justify the court in concluding that at any one of these times defendant had capacity to ratify the contract. There was no effort made to prove that the

money obtained, or any particular part thereof, was used for such purposes as would make an insane person liable for its repayment.

We conclude that the evidence supports the findings and judgment.

Judgment affirmed.