**ADAMS et al. v. ADAMS.　(No. 902.)**

(Court of Civil Appeals of Texas.　Beaumont.
May 14, 1923.　Rehearing Denied
June 27, 1923.)

**1. Trial ☜194(9)—Requested charges on weight of evidence were properly refused.**

It was not error for the trial court to refuse special charges requested by contestants of a will where the charges as framed were on the weight of the evidence.

**2. Trial ☜260(5)—Requested charges properly refused where given charge was sufficient on all issues submitted.**

Requested charges in will contest proceedings submitted on special issues were properly refused where the charge as given by the court was sufficiently full on all issues raised.

**3. Trial ☜120(2)—Statement in argument as to transaction of testator with attorney held error.**

Where contestant had testified he had taken testator to the office of an attorney for proponent, but there was no testimony as to what occurred at the office, it was error for that attorney in his argument to state that contestant brought testator there for the purpose of having him change the will he had already executed, and that he was hounding the testator to make him make the change.

**4. Trial ☜119—Reading newspaper article to jury is improper.**

It was improper for counsel in his argument to read to the jury a newspaper article criticizing practicing attorneys for the methods employed by them in the trial of cases, even though it was not reversible error under the facts of the case.

**5. Trial ☜125(4)—Argument as to purpose of contestants held improper.**

In proceedings to contest a will which made the widow of testator the chief beneficiary, where the evidence showed that one of the children had little property, but that the other child and her husband were very wealthy, and that the estate of testator was of great value, it was not proper argument for counsel for proponent to charge that the purpose of contestants was to force proponent to take in washing for a living, while they added testator's wealth to what they already had, and that it was the old game of the rich against the poor, even though such argument did not constitute reversible error.

**6. Evidence ☜505 — Sustaining objection to hypothetical question as to testator's capacity as calling for a legal conclusion held error.**

In proceedings to contest a will, it was error to sustain an objection to a hypothetical question asked an expert as to his opinion whether testator had sufficient intelligence to understand the object of his bounty, his obligations to his children, and the disposition and partition of his property, on the ground that it called for a legal conclusion.

**7. Evidence ☜553(1)—Expert should not be asked as to testator's capacity to understand "obligations" to children.**

In proceedings to contest a will, a medical expert should not be asked in a hypothetical question to state his opinion as to the capacity of testator to understand his obligations to his children, since the word "obligations" imports a legal responsibility which did not exist, and which might carry one meaning to the witness and another to the jury.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Obligation.]

**8. Witnesses ☜139(9) — Contestant cannot testify as to transactions with testator.**

In proceedings to contest a will, contestant cannot, under Rev. St. 1911, art. 3690, detail conversations in the presence of testator and testify to the opportunity contestants had to associate with testator, since under that article she cannot testify to any transaction with testator or any association with him which, were he alive and offered as a witness, could be either corroborated or denied by him.

**9. Witnesses ☜159(14)—Contestant cannot give opinion as to sanity of testator.**

The contestant of a will cannot give an opinion as to the sanity of testator from her observation of his acts, conduct, and mental and physical condition.

**10. Evidence ☜478(1)—Wills ☜164(1)— Disinterested witnesses can testify as to conversations between contestant and proponent in testator's presence, and give opinion as to sanity.**

In proceedings to contest a will for incapacity and undue influence, witnesses who were not disqualified under Rev. St. 1911, art. 3690, should be permitted to testify as to conversations between proponent and contestant in the presence of testator as to the opportunity of proponent and of contestant to associate with testator, and as to their opinion as to testator's sanity.

**11. Evidence ☜272—Wills ☜164(1)—Declarations of proponent made out of testator's presence are admissible against her.**

In proceedings to contest a will for undue influence by proponent, it was error to exclude statements made by proponent to contestant and to other parties not in the presence of testator tending to show her ill will toward contestants, the extent of her influence over testator, and the manner in which she purported to exercise her influence.

**12. Evidence ☜272—Declarations by contestee made prior to execution of will are not admissible as against interest.**

In proceedings to contest a will for testamentary incapacity, declarations by proponent made prior to the execution of the will, to the effect that testator was insane and incapable of managing his business, were not admissible on the theory that they were against interest.

---

**13. Evidence ⬅️478(1)—Nonexpert cannot give opinion testator had stated disease.**

Though a nonexpert can give an opinion as to the sanity of testator, based upon his experience with and knowledge of him, he cannot express an opinion that deceased was suffering from senile dementia if he was not an expert on mental diseases.

**14. Evidence ⬅️510—Expert can state deterioration in handwriting indicated senile dementia.**

In will contest proceedings, it was error to exclude testimony by an expert witness that the marked deterioration in the handwriting of testator during the last few years of his life was an indication of senile dementia.

**15. Appeal and error ⬅️742(1)—Propositions need not be related to specific assignments of error.**

Under Court of Appeals rule 30 (230 S. W. vii), requiring propositions to be germane to one or more of the assignments of error, or to relate to fundamental error, it is no longer necessary for an appellant to relate the several propositions to specific assignments of error; but, if a proposition is excepted to on the ground it is not germane to one or more of the assignments, the appellate court must examine all the assignments to pass on the merits of the exception.

### On Rehearing.

**16. Trial ⬅️194(9)—Charge as to undue influence held not on weight of evidence.**

A charge that mere opportunity to exercise due influence or influence occasioned by affection or acts of kindness are not sufficient to establish undue influence to avoid a will, and that the necessary undue influence must have been exerted in relation to the will itself, was not erroneous as being on the weight of the evidence.

Appeal from District Court, Jefferson County; W. H. Davidson, Judge.

Proceedings for the probate of the will of Elisha Adams, deceased, by Carrie E. Adams, contested by A. N. Adams and another. From an order admitting the will to probate, contestants appeal. Reversed and remanded for new trial.

W. R. Blain and A. L. Shaw, both of Beaumont, for appellants.

Gordon, Lawhon & Pool, Robt. L. Rodgers, and Sam C. Lipscomb, all of Beaumont, for appellee.

WALKER, J. This is an appeal from an order of the district court of Jefferson county admitting to probate the last will and testament of Elisha Adams, deceased. His widow, Carrie Adams, was the chief beneficiary, and her application to probate the will was contested by A. N. Adams and Carrie Willard, his children by a former marriage. The grounds of contest were (1) want of testamentary capacity and (2) undue influence exercised by Carrie Adams over the testator in the execution of his will. Both issues were raised by the evidence. The trial was to a jury on special issues, submitted on the following charge:

"Gentlemen of the Jury:

"(1) The court instructs you that at the time of executing the document in controversy, bearing date of September 22, 1919, Elisha Adams was 21 years of age, and that all formalities and solemnities required by law were complied with, and that the said Elisha Adams signed said instrument on said date, and there are only two questions for you to consider: First, was Elisha Adams of sound mind at the time of the signing of said instrument? In other words, did he have testamentary capacity at said time? Second, was the execution of said will on the part of Elisha Adams procured through and by means of undue influence exerted upon him by Carrie Adams?

"(2) A person has 'testamentary capacity' if at the time he executes a will his mind and memory is sufficiently sound to enable him to know and understand what he is doing and the effect of his act.

"(3) 'Undue influence' as used in connection with the execution of wills is an influence exerted upon the testator which compels him to do that which is against his will from fear or desire of peace, or some feeling which he is unable to resist. This influence must be of such power and force as to destroy the will power and free agency of the testator, and result in the execution of a will which does not represent the wishes of the testator, but represents the wishes of the person exercising the influence.

"(4) In this connection you are instructed that the mere opportunity to exercise due influence, or influence occasioned by affection or acts of kindness by the person using the influence are not sufficient, and, in order to avoid a will on the ground of undue influence, this influence must have been exerted in relation to the will itself.

"(5) You are instructed that, if a person is of sound mind and memory, that is, that he has testamentary capacity when he makes a will, and such will is not procured by means of any undue influence, he has the right to make an unequal distribution of his property among persons who, without the will would have participated to a larger extent in his property under the general laws of descent and distribution. In other words, under those conditions he has the right to make any disposition of his estate he may see fit.

"(6) The burden rests upon Carrie Adams to prove to the satisfaction of the jury that Elisha Adams was of sound mind; that is, that he had testamentary capacity at the time of executing the will under consideration.

"(7) The burden of proving that the will was procured through undue influence on the part of Carrie Adams is upon the contestants.

"(8) You are the sole and exclusive judges of the facts proven, the credibility of the witnesses, and the weight of the evidence, but the law you must take from the court as given in this charge and in such special charges as may be given, if any, and be governed thereby.

"(9) Bearing in mind the foregoing instructions, you will answer the following questions: 'Issue No. 1: Did Elisha Adams at the time he executed the instrument of writing bearing date of September 22, 1919, and witnessed by J. D. McLain, F. R. Wilson and Jim Turner, and purporting to be his last will and testament, have testamentary capacity as that term has been defined? Answer 'Yes' or 'No.' "

[Answer: "Yes."]

"Issue No. 2: Was the instrument bearing date of September 22, 1919, and hereinbefore referred to, procured through undue influence exerted upon Elisha Adams by Carrie Adams as the term 'undue influence' has hereinbefore been defined? Answer 'Yes' or 'No.' "

[Answer: "No."]

"(10) You will write your answers to these questions on a separate sheet of paper from this charge, letting your foreman, whom you will select, sign the same, using substantially the following form: To issue No. 1 we answer, ———; to issue No. 2 we answer, ———, filling in your answers to the questions propounded."

All the parties to this appeal are negroes.

[1, 2] Appellants make complaint of the refusal of the court to give certain special charges requested by them, submitting instructions to the jury on the law. These charges, as framed, were correctly refused, as all of them were on the weight of the evidence. Again, on the facts of this case, it is our judgment that they were correctly refused, because the charge as given was sufficiently full on all issues raised, without further instructions.

We also overrule all of appellants' exceptions to the court's charge, except to the fourth paragraph, which is as follows:

"In this connection you are instructed that the mere opportunity to exercise undue influence, or influence occasioned by affection or acts of kindness by the person using the influence, are not sufficient, and, in order to avoid a will on the ground of undue influence, this influence must have been exerted in relation to the will itself."

Unquestionably this charge embodies a sound legal proposition (Holmes v. Houston [Tex. Civ. App.] 241 S. W. 1039, and authorities there cited), but one for the guidance of the court in weighing the sufficiency of the evidence as against the jury's verdict, and not to be given in charge to the jury, a distinction now firmly established as a principle of our trial procedure (Carl v. Settegast [Tex. Com. App.] 237 S. W. 238). When we had that case before us (211 S. W. 506), on a thorough review of all the authorities in point we held that it was not error to give to a jury the measure by which the law itself weighs the evidence, in order that they might intelligently apply the evidence to the particular issues involved; but our holding was reversed by the Commission of Appeals, and it would no longer seem to be an open question in this state. Gallagher v. Neilon (Tex. Civ. App.) 121 S. W. 569; Buck v.

Woodson (Tex. Civ. App.) 209 S. W. 246; Cornelius v. Burford, 28 Tex. 203, 91 Am. Dec. 309; Heldt v. Webster, 60 Tex. 207; White v. Epperson, 32 Tex. Civ. App. 162, 73 S. W. 851.

In his closing argument to the jury counsel for appellees committed error in the following respects:

[3] (1) To give in full appellants' thirteenth bill of exception:

"Be it remembered that, upon the trial of the above entitled and numbered cause, the contestant, A. N. Adams, was asked on cross-examination by Sol E. Gordon, one of the attorneys for the defendant, whether or not, he, the said A. N. Adams, had brought his father, Elisha Adams, to the office of the said Sol E. Gordon some time during the month of September, 1919 (about the time of the execution of the will), and that the said A. N. Adams then asked Mr. Gordon if he desired him to state the facts with reference to his father's visit to Mr. Gordon's office, and thereupon testified that he had been in Mr. Gordon's office some time about the month of September, 1919, together with one F. R. Wilson consulting Mr. Gordon with reference to some matters in which he (witness) and the said F. R. Wilson were interested, and that as he was about to leave the office Mr. Gordon spoke to him with reference to his father's property, and asked him whether or not his father (Elisha Adams) had made a will, and that he (witness) replied that he did not know, and that he believed that his father was not in condition mentally to make a will, and that the said Sol E. Gordon then told him that if he would bring his father to his office he would discuss the matter with him, and that he thought he would be able to prepare a will which would stand in court, and that he (witness) brought his father to Mr. Gordon's office, but did not himself enter the office with his father, but left Elisha Adams in the office, and that he knew nothing of what transpired between him and Mr. Gordon, and that he afterwards sent an automobile to the Perlstein Building, in which Mr. Gordon's office was located, for the purpose of having his father taken home from the office; and, further, that the said A. N. Adams testified that he had never at any time attempted to persuade his father to make a will, and that he knew nothing of the execution of the will in controversy until after it was filed for probate; that the said Sol E. Gordon did not testify as a witness in that case, but failed to take the stand and testify with reference to said transaction, and that during the argument of the said Sol E. Gordon before the jury and in the closing argument in this case the said Sol E. Gordon, in discussing the testimony of the contestant, A. N. Adams, stated that no will was written by him, because in the conversation that took place between him, the said Sol E. Gordon, and Elisha Adams, it developed that Elisha Adams had already made a will, and for that reason a new will was not written, and that Elisha Adams refused to make another will, and further stated that, 'as sure as you are living, Adam Adams brought his father to my office for the purpose of having him change the will he had already executed, and that the reason a new

will was not written was because the old man refused to change this will, and that he (Adam Adams) was hounding the old man for the purpose of trying to make him change the will, just as he had hounded him years before; and forced him to make a division of his property,' to which argument and statement by the said Sol E. Gordon the plaintiffs objected, and asked the court to instruct the jury not to consider the same, for the reason that the said Sol E. Gordon had not testified in the case as to what occurred between him and Elisha Adams, and the said Sol E. Gordon then and there stated that, while he had not testified in the case, his statement and argument was the logical conclusion and deduction to be drawn from the testimony of the witness Adam Adams; and the court, having overruled said objection of plaintiffs, stated in the presence and hearing of the jury that it was for the jury to say whether or not the statement of counsel was a correct inference and logical conclusion to be drawn from the testimony, to which action and ruling of the court the plaintiffs then and there excepted, and here now tender this their bill of exception No. 13, and pray that the same be allowed."

Under the following authorities the argument complained of was reversible error: Whittaker v. Thayor, 48 Tex. Civ. App. 508, 110 S. W. 787; Railway Co. v. Wood (Tex. Civ. App.) 91 S. W. 803; Western Union Telegraph Co. v. Ray (Tex. Civ. App.) 147 S. W. 1194.

[4] (2) After severely criticising appellants' counsel and condemning their methods in the trial of the case, and imputing improper motives to appellants because of their employment of one of appellants' counsel, counsel for appellee then read to the jury, over appellants' objections, a newspaper article severely criticising practicing attorneys for engaging in the methods which he had just charged against appellants' counsel. Exception was duly reserved to the reading of the article by counsel, which exception the trial court overruled. While we would not reverse this case because of such argument, yet, in our judgment, it is improper, and under a different state of facts might require a reversal. The rule is thus stated by 2 Standard Proc. 818:

"It is improper * * * to permit counsel to read newspaper or magazine comments upon the case on trial, or upon the facts connected with it, or upon like matters."

. Minter v. Bradstreet Co., 174 Mo. 444, 73 S. W. 668, was a libel action against a commercial agency for circulating a false report. Over exception duly reserved, plaintiff's counsel was allowed to read to the jury a magazine article criticizing the conduct of such agencies. The court held that the reading of such an article, while not reversible error, was not creditable practice.

[5] (3) The estate of Elisha Adams, deceased, was of great value. Under the law of descent and distribution appellee would have received a large interest in his estate. A. N. Adams was not shown to own very much property, but his sister, Sarah Willard, and her husband, Elmo Willard, were very wealthy. Under these facts, over the objection of appellants' counsel, counsel for appellee indulged in the following argument:

"Gentlemen, what do the contestants want? What do they want to give this widow? It seems to me they want everything and want to give the widow nothing. The testimony here shows that Elmo Willard is a rich man, endowed with more property and effects than his deceased father-in-law, and yet he wants everything. The evidence in this case shows that the widow has nothing, and that if the will is set aside she will be practically penniless. It seems to me that it is the old game of the rich against the poor, the rich to take everything and the poor to get nothing. It seems to me that what they are trying to do is to force this widow to take in washing for a living while they take all of the property, which she helped her deceased husband to preserve. It looks like they are trying to starve her out and make a washerwoman out of her."

We do not hold the argument complained of to constitute reversible error, but it is condemned by Campbell v. Prieto (Tex. Civ. App.) 143 S. W. 668; Railway Co. v. Swann, 60 Tex. Civ. App. 427, 127 S. W. 1164.

Appellants' fifteenth bill of exception is as follows:

"Be it remembered that, upon the trial of the above entitled and numbered cause, after the witness Dr. Will T. Williams had qualified as an expert, he was handed the alleged will of Elisha Adams sought to be probated in this cause, and requested to look over its provisions and terms, and the following question was propounded to him to wit: 'Now I want to ask you, considering that Elisha Adams was from 75 to 80 years of age, and that in his younger days he evidenced strength of mind, aggressiveness, and mental acumen, but he had for two years previous to his death evidenced a loss of memory, his language at times was incoherent, and he talked at random, and whose thoughts that he expressed in words were without any apparent bond of association, that is, in talking he would wander from one subject to another, whose memory was exceedingly weak, and who frequently failed to recognize old acquaintances and persons he had known for 15 or 20 years or less, or recognize things with which he had been acquainted, and who had been neat in his dress and appearance, but had become indifferent thereto, and would sit and permit flies to swarm about his person without attempting to brush them away, and would seem scarcely conscious of what was passing around him, and being stricken a day or two before that with illness, and who was carried home, and was in bed, and not recognizing the doctors, one or two of whom he had known for years, when they called upon him, and who was conscious or semiconscious about that time, and had senile dementia, state in your opinion whether or not he had sufficient intelligence of mind at that time to understand the object of his bounty and his obligations to and affection for his chil-

dren, and the disposition and partition of his property?' To which question and the answer sought to be elicited the defendant objected, because it was an effort to prove by the doctor the question to be propounded to the jury, and was not predicated upon a proper hypothetical question based upon the facts, but assumed certain conditions to exist which were not disclosed by the testimony in the case, and because it called for a legal conclusion, which objection was sustained by the court, and the said witness, if permitted, would have answered said question and have stated that in his opinion a person in the condition described did not have sufficient intelligence of mind to understand the object of his bounty and his obligations thereto, and affection for his children and the disposition and partition of his estate, to which action of the court in sustaining said objection and excluding the testimony of said witness, the plaintiffs then and there excepted, and here now tender their bill of exceptions No. 15, and pray that the same be allowed.

"O'Brien & Shaw,
"W. R. Blain,
"Attorneys for Plaintiffs.

"This bill No. 15 is allowed and approved with the following qualification: Which objection to the question as presented was sustained on the grounds set out in the bill. Counsel were allowed ample latitude in their examination of Dr. Williams, and the record shows that he answered hypothetical, but not such broad questions over protest from defendants' counsel. This July 26, 1922.

"W. H. Davidson, Judge."

[6, 7] As disposing of all of the exceptions urged to the question except that "it called for a legal conclusion," we find that all the conditions assumed by the question were raised by the evidence, and that, as shown by the record, Dr. Williams did not give, in effect, the answer called for by this particular question, and, while appellants were allowed a large latitude in their examination of Dr. Williams, no inquiry was permitted upon the subject involved by the foregoing hypothetical question. We believe the trial court committed error in excluding the question, on the ground that it called for "a legal conclusion." It is now firmly established in this state, since the decision of Brown v. Mitchell, 88 Tex. 358, 31 S. W. 621, 36 L. R. A. 64, that a witness cannot give an answer which carries with it his legal construction of the facts in evidence before the jury. On a will contest experts and other witnesses on their personal acquaintance, association with, observation of, and knowledge of the testator's condition, physically and mentally, may express their opinion as to his sanity, his susceptibility to the influence of others, and other conclusions as to his mental condition drawn from their actual observation (Brown v. Mitchell, supra; Scalf v. Collins County, 80 Tex. 517, 16 S. W. 314; Koppe v. Koppe, 57 Tex. Civ. App. 204, 122 S. W. 74; Rankin v. Rankin [Tex. Civ. App.] 134 S. W. 395; McDonald v. McDonald [Tex. Civ.

App.] 150 S. W. 593), but they cannot give to the jury their opinion as to the legal effect of the condition of the testator as reflected by the evidence. The rule is thus stated with a clear suggestion as to the proper form of such questions in Kempsey v. McGinniss, 21 Mich. 124, which was fully approved by our Supreme Court in Brown v. Mitchell, supra:

"It would have been much fairer, more in accordance with principle, and much less in the nature of leading questions; to have put the questions in such a manner as to call only for an opinion of what the real state of the testator's mind was, how much intelligence he possessed, how far he was capable of understanding the nature and situation of his property, his relations to others, and the reasons for giving or withholding his bounty as to any of them, etc., than to ask them whether he had a disposing mind and memory, or whether he was capable of making a will."

As illustrating the difference between questions calling for conclusions of fact and legal conclusions, see, also, Beasley v. Faust (Tex. Civ. App.) 217 S. W. 179; Lindsey v. White (Tex. Civ. App.) 61 S. W. 440. On another trial, if this question is again asked the witness, it should be so framed as to eliminate the inquiry addressed to "his (Elisha Adams') obligations to * * * his children." The word "obligations" imports a legal responsibility on the part of Elisha Adams to his children which did not exist, and which might easily carry one meaning to the witness and another to the jury.

[8-11] While testifying on behalf of herself and her brother, Sarah Willard was asked to give the details of certain conversations between Carrie Adams and her husband, in the presence of the witness and with her, and the extent of Carrie Adams' association with testator. She was also asked as to the opportunity she and her brother had to associate with their father in the presence of Carrie and when she was not present, and the extent of such association. This testimony was all properly excluded, under article 3690, Revised Civil Statutes. As we understand the construction given this article, Sarah Willard could not testify to any transaction had by her with her father or any association with him or any circumstance between her and him which, were he alive and offered as a witness, could be either corroborated or denied by him (Leahy v. Timon, 110 Tex. 73, 215 S. W. 953); nor could she give an opinion as to the sanity of her father from her observation of his "acts, conduct, and mental and physical condition." Holland v. Nimitz (Tex. Com. App.) 232 S. W. 299. But the court erred in excluding similar evidence offered by witnesses not disqualified under article 3690. Also the court erred in excluding statements made by Carrie Adams to Sarah

Willard· (not in the presence of the testator) and to other parties tending to show her ill will towards appellants, the extent of her influence over testator, and the manner in which she purported to exercise her influence. Scott .v. Townsend, 106 Tex. 322, 166 S: W. 1138. These were all circumstances of probative force on the issue of the exercise by her of an undue influence over her husband in the execution of his will. The effect of· such testimony is discussed by the following· authorities: Holt v. Guerguin (Tex. Civ. App.) 156 S. W. 584; Goodloe v. Goodloe,· 47 Tex. Civ. App. 493, 105 S. W. 535; . Gallagher v. Neilon, supra; Barry v. Graciette (Tex. Civ. App.) 71 S. W. 310; Taylor v: Wilburn, 20 Mo. 306, 64 Am. Dec. 186; Woodbury v.·Woodbury, 141 Mass. 329, 5 N. E. 275, 55 Am. Rep. 479. Those authorities also discuss the nature of "undue influence," its difficulty of proof, and the effect of circumstances in making out the charge.

[12] The court did not err in excluding certain declarations made by Carrie Adams prior to the execution of the will to the effect that Elisha Adams was insane, of unsound mind, and not capable of managing his business, on the theory that such declarations were "against interest." Prather v. McClelland, 76 Tex. 588, 13 S. W. 543; Lindsey v. White, supra; Bell v. Preston, 19 Tex. Civ. App. 375, 47 S. W. 375, 753.

[13] The' court did not err· in refusing to permit Judge David E. O'Fiel to testify that in his opinion the deceased, at the time he executed the will, was suffering with senile dementia. The court correctly permitted him to express an opinion as to the sanity of the deceased, based upon his experience with and knowledge of him; but, as the witness was not an expert on mental diseases, he was 'not qualified to express an expert opinion upon the particular malady with which testator was suffering.

· [14] The evidence showed a marked deterioration in the handwriting of testator during the last few years of his life. The court erred in excluding Dr. Williams' opinion as an expert to the effect that this circumstance was an indication of senile dementia. On hearings of this character experts should be permitted to express their expert opinions on all· facts and circumstances in evidence which, in their opinion as experts, reflect the mental condition of the testator.

[15] Appellants' brief was not subject to criticism on the ground that they did not relate their several propositions to, specific assignments of error. The new rules relieved appellants of that burden. All that is now required, under rule 30 (230 S. W. vii), is that their propositions "shall be germane to one or more of the assignments of error or relate to fundamental error." In stating a proposition it is not necessary for an appel-lant to refer to any assignment of error as a basis therefor. If a proposition is excepted to on the ground that it is not germane to "one or more of the assignments of error," it .then becomes our duty to examine all the assignments of error, and from such assignments pass on the merits of the exception. All of appellee's exceptions to appellants' proposition are overruled.

For the reasons given, the judgment of the trial court is reversed, and this cause remanded for a new trial.

## On Rehearing.

[16] In holding that the court's charge on the issue of undue influence was on the weight of the evidence, it appears that we are in conflict with Robinson v. Stuart, 73 Tex. 267, 11 S. W. 275, a case not called to our attention on the original submission. In that case the Supreme Court approved a charge very similar to the charge given in this case. It would appear that a charge of this character on the issue of undue influence is not on the weight of the evidence.

All other matters assigned by appellee have had our most careful consideration, both on oral argument and on written briefs, and are overruled.